BUFORD (DICK) DIXON, Respondent-Appellant,

*v.*

AUSTIN P. McCLARY, Petitioner-Appellee.

349 S. W. 2d 140.

(*Knoxville,* September Term, (May Session) 1960.)

Opinion filed July 26, 1961.

Rehearing Denied September 5, 1961.

CHARLES FISK ROLSTON, Chattanooga, for appellant.

R. R. KRAMER, R. ARNOLD KRAMER and CARTER B. WALL, Knoxville, for appellee. KRAMER, DYE, McNABB & GREENWOOD, Knoxville, of counsel.

Mr. Justice Swepston, delivered the opinion of the Court.

This is an election contest by Austin P. McClary, hereinafter referred to as contestant, against Buford Dixon, hereinafter, in order to avoid confusion, referred to as appellant, as a result of the General Election held in Polk County on August 4, 1960, as a result of which according to the official returns, Dixon was elected Sheriff.

August 8, 1960, McClary filed his petition for contest against appellant Dixon, the three election commissioners and the election officials of the 8th Precinct, sometimes referred to as the Turtletown Precinct, located in the 3rd Civil District of Polk County. He alleged that he was the qualified candidate of the Democratic Party for the office of Sheriff and that appellant was the qualified candidate of the so-called Good Government League or Republican Party of the County. The complaint is as to what occurred only in said 8th Precinct.

The substance of the petition is that the election proceeded in an orderly and regular manner until the closing hour at 4:00 p. m. and that after the polls were closed the officials began to count the 253 absentee ballots that had been brought in by the election commissioners. One Ernest Carruth, a watcher for the Good Government League, became dissatisfied with the rulings of the judges on some of the first few absentee ballots that were allowed by the officials, as a result of which he went outside and

returned immediately with several men, some of whom were armed, and attempted to destroy the absentee ballots by throwing some out the window of the room in the school building in which the election was held or to tear up some or to take some out through the door. When he was thwarted at the window by one of the election judges he said "I will kill you, you son of a bitch". As a result of his threats and the fact that he was accompanied by his armed cohorts who had no right whatever to be in the room, the respective sides reached an agreement under duress and agreed to cast 76 ballots on each side among the absentee ballots and then under the same duress they put all of the remaining absentee ballots in the box with all ballots that had been cast during the day including those which were cast in accordance with the compromise agreement made under duress, together with the scrolls or poll books in which were entered the names of all persons who had voted in the election in said precinct. After such of the absentee ballots as had been cast under the compromise agreement were put in the box and their names registered on the scrolls, one Carmel Gibson insisted that the judges mark the remaining absentee ballots void; the judges refused to do so but Gibson himself marked them void.

The petition further alleged that outside of this precinct appellant received 2,373 votes whereas contestant received 2,285, that in this precinct appellant received 295 while contestant received 327, but if a remaining 98 absentee ballots, which had not been cast because of threats of bodily injury or more serious harm to the officials had not been cast, should be cast that the contestant would be the elected Sheriff.

The petition further relied upon the validity of the election except in substance it is alleged that because of the above recited occurrences the election was not actually completed and the certification of the returns for that precinct having been made under duress was not binding, as a result of all of which the court was asked in the alternative either to have the election officers complete the election or to have the ballot box impounded and brought into court and the remaining absentee ballots counted by the judge himself in the presence of the two candidates, their attorneys, etc.

Pursuant to proper prayers the ballot box was removed under guard from the office of the election commissioners of Polk County in the Courthouse at Benton, Tennessee, and taken to Cleveland, Tennessee, and there stored in the bank vault under lock and key and seal.

Omitting for the present certain pleas and demurrers, the appellant filed an answer in which he stated that by reason of certain alleged irregularities and failure to comply with the election laws that said election was conducted illegally, was invalid and void and should be disregarded in computing the votes cast in the Polk County General Election.

Then in the alternative, it was stated that if on the other hand the court should find that the election was legal in said precinct and was able to purge the alleged illegal votes from said returns that the court determine by any proper method other than having the former election officials count the vote determine how many legal votes were cast in said election.

Upon the threshold of the taking of testimony the trial court ruled that the only material question under the

petition of the contestant was whether certain absentee ballots which had not been counted on account of the disturbance above described should be counted if they met the requirements of the law; that the contestant was relying upon the validity of the election and there is no contest as to the same but only the question of which of the remaining unvoted absentee ballots should be counted. He struck all of the appellant's answer which would undertake to question the legality of the election and which undertakes to say that it was void, because the appellant has not filed any petition to contest and is resting upon the validity of the election and is holding office under it.

Proof was taken and we have examined the same and it clearly establishes the allegations of the contestant's petition as to the threats of bodily harm and the resulting duress under which the officials acted in certifying the election without counting certain absentee ballots. The court then ordered the ballot box brought into court under proper safeguard, the same was opened and the absentee ballots were examined with the attorneys for each side sitting beside the judge and with full opportunity for observation of the entire procedure and the right to challenge votes. Out of 99 votes the court determined that there were 70 absentee ballots that should be counted. The court counted 67 for the contestant which added to those received from the other precincts gives the contestant a total of 2,679 and the appellant a total of 2,671 and hence the contestant was declared elected Sheriff.

■■ The first assignment of error complains of the holding of the Circuit Court of Polk County sitting at Benton that it had jurisdiction to try this cause. It is insisted that under Ch. 413, Private Acts of 1911, the Law Court of Ducktown had exclusive jurisdiction to try this

case. Sec. 2 of that Act does provide "that the Law Court of Ducktown shall have exclusive general common law jurisdiction, original and appellate, in all cases at law of a civil character wherein the defendant is a resident, or if a corporation has its principal office or agency or any local agency in said districts named in the first section of the Act * * *." The Turtletown precinct is located within the district covered by the Law Court of Ducktown. When the petition for contest was originally filed four of the defendant, Jones, Laudermilk, Diehl and Gilmore, were residents of the district covered by the Law Court of Ducktown. However, the stipulation shows that the suit was later dismissed as to those four, leaving Dixon, Campbell, Kimbrough and Shoemaker, who were not residents of the district over which the Law Court of Ducktown has jurisdiction, but were and are residents of districts over which the Circuit Court of Polk County sitting at Benton has jurisdiction. Under the express wording of the Private Act the Law Court at Ducktown has exclusive jurisdiction only where at least one material defendant resides within its territorial limits. The last sentence of Sec. 2 provides in such case for the issuance of counterpart process for joint defendants residing out of said district. Therefore, the most that can be said is that under the Private Act granting jurisdiction to the Law Court at Ducktown "over all cases arising at law within said civil districts" is concurrent with the general jurisdiction of the Circuit Court of Polk County sitting at Benton unless the express provision for exclusive jurisdiction in said Law Court is met. T.C.A. sec. 2-1902 provides that "The circuit court hears and determines all contests of the election of sheriffs, clerks of the circuit, criminal and other court whose clerks are elected by the people, except clerks of the county court."

Therefore, the trial judge correctly sustained the demurrer of contestant to the plea in abatement to the jurisdiction filed by the appellant.

■ The second assignment of error complains of the trial court's overruling appellant's motion to dismiss the petition for contest on the ground that the petition was indefinite and void as a result of petitioner's failure to name the voters whose absentee ballots were not cast. The trial court held it was utterly impossible for petitioner to make any such allegation at the time of the filing of the petition. This is obviously correct by reason of the alleged and proved facts that the unvoted absentee ballots were placed in the ballot box when the acts of violence occurred and were locked up and sealed and put in the vault of the election commissioners in Benton for safekeeping. Contestant had no way to gain access. The assignment is overruled.

■ Assignments of error 3, 6, 7, 8, 12, 13, 18 and 19 and the arguments made in support thereof all depend upon the insistence by appellant that he was entitled to show that the election was void and invalid because of various irregularities and it is insisted that the court committed error when it struck all of the appellant's answer which was directed at showing said election to be void.

We think the court was not in error in so ruling. The appellant was a candidate for election to this office, was not a holdover candidate, and received his certificate of election on the strength of the validity of the returns and has been inducted into and is holding office on the strength of the validity of the returns so certified. Accordingly,

even though the contestant asserts and relies on the validity of the election and simply asks in his petition that the election be completed by counting the absentee ballots in question, appellant is not in a position to contest the validity of the election.

It is established by *Nelson v. Sneed.* 112 Tenn. 36, 83 S.W. 786, and *Mathis v. Young,* 200 Tenn. 168, 291 S.W.2d 592, that a *contestant* cannot stand on such an inconsistent position and we think the same rule applies to a *contestee.*

The objective of appellant in assuming this position is to have the election in this precinct declared void, regardless of the substantial number of votes which were cast therein and of such effect as the discarding of all of these votes might have on the total vote of the county, in order that he might maintain the majority which he has ostensibly received in the precincts outside this Turtletown or 8th precinct.

For the foregoing reasons, all of those assignments are overruled.

The 4th assignment is that the proof fails to sustain the contestant's averment that Ernest Carruth drew his pistol and made threats or that anyone else was armed except a duly qualified deputy sheriff. Assignment 5 says there is no material evidence to support the judgment and assignment 21 asserts that the judgment is contrary to the weight of the evidence.

We find no merit in any of these three assignments and the same are overruled.

Assignment 9 asserts that the court erred in failing to require the contestant to carry the burden of proof as to

the validity of the absentee ballots not counted on account of the disturbance that occurred. This assignment is now immaterial because when the court counted them the respective attorneys were given the opportunity to challenge same.

Assignment 10 asserts that the court erred in finding that the ballot box from the precinct in question had been kept in such custody that it could not have been tampered with. The evidence in support of the trial court's ruling is overwhelming. The assignment is overruled.

The 11th assignment alleges error in the ruling of the court that the returns certified by the election officials of the said precinct were incomplete because of the duress exerted against the officials. Obviously, this assignment is without merit under the evidence of the case. Overruled.

 Assignment 14 asserts that the trial court erroneously counted absentee ballots contained in individual envelopes bearing registration Nos. 187, 82, 104, 84 and 150.

Although the court held that none of these ballots had been cast, yet when he checked the signatures on the affidavits on each of the individual envelopes against the signatures contained in the registration book he rejected 187, 104 and 150 and actually counted only 82 and 84. He counted these last two numbers, although when he opened the ballot box in open court he found that those two envelopes had been opened, because those two ballots still had the numbers affixed to them. The court held that those two ballots had not been previously counted by the election officials because when they were counted the law requires the election officials to remove the num-

ber before placing it in the ballot box. There is the presumption that election officials are presumed to know the law and that they acted in compliance therewith. *State ex rel. Robinson v. Hutcheson,* 180 Tenn. 46, 55, 171 S.W.2d 282.

It is further insisted that even if said last two numbered ballots had not been cast by the election officials they may have been among those that had been challenged and rejected by the election officials. However, as heretofore noted, the word "void" was marked on not only these two but on 90 odd other individual ballot envelopes which had not been opened, this having been done by Carmel Gibson, one of the watchers for the Good Government League, who at first asked the judges to mark all of those ballots void and when they refused to do so, he did the marking himself. So these two were among those that were not voted because of the violence. The assignment is accordingly overruled.

Assignment 15 complains of the counting by the court of the ballot contained in envelope bearing No. 134 on the ground that the signature of the voter was printed on the registration card and written on the affidavit on the back of the envelope.

■ The court made a careful determination of all of these objections to different ballots including this one and threw out some and included others. Unless the evidence preponderates against the correctness of his judgment, which it does not, his findings are presumed to be correct and there is nothing that the appellate court can do about it under T.C.A. sec. 27-304. The assignment is overruled.

The same thing may be said of assignments 16 and 17. Under 16 the objection is to the counting of the ballot contained in envelope bearing No. 144 because the ballot appeared to be marked with a 4 instead of an X. The court held that it was immaterial whether it was one or the other because he could determine the voter's intention and could correctly record the vote as being for the person for which the voter intended to vote. Then too, it is quite easy to see that a careless or unsteady person might very easily make a figure intended for an X that would resemble a 4.

No. 17 objects to the counting of several ballots which were marked "by the same pencil and the same character". The suggestion may not be amiss that any but an expert perhaps who can tell whether the same pencil is used in a number of instances is bordering on genius. We think the evidence does not preponderate against the correctness of the findings of the trial judge. The assignment is overruled.

The last assignment undisposed of is No. 20. The complaint there is that the court did not follow the part of T.C.A. sec. 2-1609 which provides "* * *, and the envelope shall then be opened and the folded ballot taken therefrom, the number torn off and the ballot deposited in the regular ballot box without being examined or unfolded, and the same shall be counted the same as if the voter had appeared and cast his or her ballot in person; * * *."

It is insisted that the court in counting the 70 absentee ballots as being valid and entitled to be voted deprived the respective voters of the right to a secret ballot as provided by the statutes.

The procedure followed by the court was as follows: Each envelope containing an unvoted absentee ballot was checked to determine if the voter submitting such ballot should have had his ballot cast in the election by the election officials in this precinct. This was done by examining only the envelope and registration book. All of the individual envelopes were checked before the ballots were removed and opened. After the court determined that 70 of the ballots contained in 70 separate envelopes should be cast, then he proceeded with the opening of the envelopes. He would open one envelope, and read the ballot, and call the vote from that ballot without in any way mentioning whose ballot was being counted. Then the same was replaced in the envelope from which it had been removed.

The court was of opinion that this was the only method by which he could cast and count the ballots and still preserve the record for an appellate court. Otherwise, if the court had removed the ballots from the individual envelopes and thereafter had kept all such ballots separated from the envelopes from which they had been removed, and if later during the trial, or on consideration of a motion for a new trial, or on appeal, the question had been raised concerning a particular ballot, there would have been no way for either the trial court or the appellate court to have rejected that particular ballot.

While it is true that the trial judge and others participating in the count, as heretofore mentioned, knew for whom each vote was cast, still we think (1) that this is the only rational way that this could have been handled and (2) no voter is complaining of such action and it

was a benefit to either party who might want to appeal, who in this case happened to be the present appellant.

We think the trial court used every reasonable precaution to see that this election was completed which had been interrupted by violence, and that a fair casting of the absentee ballots was made.

All assignments are overruled and the judgment below is affirmed with costs.

All concur.

## On Petition to Rehear

The petition to rehear filed in behalf of Buford (Dick) Dixon is a reargument of matters already considered and disposed of in the original opinion.

The same is respectfully overruled.

PREWITT, CHIEF JUSTICE, and BURNETT and FELTS, JUSTICES, concur.