STATE of Tennessee on the relation of Ken WITCHER, Plaintiff/Appellee,

v.

Thomas H. BILBREY, Billy Bransford, Jack Brockett, Charlie Cherry, Rickey Day, Jerry Gayle Lee, Talmadge Overton, Floyd Ray Sullivan, Randall G. Templeton, Thomas Tucker, Willard Shrum, Fred Clark, Melburn Cothron, Leo Bandy, Jr., Bobby Thomas, Donnie Swindle, Curtis J. Cookson, Anna Dean Carter, Hazel E. Goodman, Dorothy D. Harper, Consisting of the Board of County Commissioners of Macon County, Tennessee, and Doyle Gaines, County Executive of Macon County, Tennessee, Defendants/Appellants.

Court of Appeals of Tennessee, Middle Section.

March 2, 1994.

Application for Permission to Appeal Denied by Supreme Court June 13, 1994.

E. Guy Holliman, Farrar & Holliman, Lafayette, for appellants.

Jacky O. Bellar, Carthage, for appellee.

### OPINION

KOCH, Judge.

This appeal concerns Macon County's obligation to appropriate county funds to compensate a special judge appointed by the Governor to preside over the Macon County General Sessions Court during the incumbent judge's disability. The special judge

filed a mandamus action in the Circuit Court for Macon County against the county board of commissioners and the county executive seeking payment for his services. The trial court, sitting without a jury, directed the county board of commissioners to appropriate funds for the special judge's salary and also directed the county executive to pay the special judge's salary from these funds. A majority of the county commissioners have appealed to this court,[1] asserting that the statute authorizing the Governor to appoint temporary general sessions court judges is unconstitutional and that the special judge was not entitled to a writ of mandamus. We have determined that the statute is constitutional and that the special judge was entitled to a writ of mandamus under the facts of this case. Accordingly, we affirm the judgment.

### I.

The General Assembly created the Macon County General Sessions Court by private act in 1951[2]—eight years before enacting legislation creating a state-wide system of general sessions courts.[3] The private act provided that the general sessions court judge would serve an eight-year term and that the judge's salary would be paid from the county's general funds.[4] The General Assembly, in accordance with the custom at the time, also appointed the first judge of the Macon County General Sessions Court to a term that expired on September 1, 1952.[5]

James E. Chitwood was elected judge of the Macon County General Sessions Court in 1990. He became ill in early 1992 and some time later certified to Governor Ned McWherter that he was temporarily unable to perform his duties. On May 29, 1992,

---

1. Appeals in mandamus proceedings now come to this court rather than to the Tennessee Supreme Court as a result of Act of May 1, 1992, ch. 952, § 2, 1992 Tenn.Pub.Acts 950, 951. *See* Tenn.Code Ann. § 16–4–108(a)(1) (Supp.1993).

2. Act of Mar. 12, 1951, ch. 555, 1951 Tenn. Priv.Acts 1666.

3. Act of Mar. 5, 1959, ch. 109, 1959 Tenn.Pub. Acts 350, codified at Tenn.Code Ann. § 16–15–101 (1980).

4. Act of Mar. 12, 1951, ch. 555, §§ 8, 9, 1951 Tenn.Priv.Acts 1666, 1669–70. The general state law passed in 1958 also provided that general

sessions court judges would be elected for eight-year terms and that their salaries would be paid with county funds. *See* Tenn.Code Ann. § 16–15–202 (Supp.1993) (the term of office); Tenn. Code Ann. § 16–15–207 (repealed 1993) (salary responsibility). Present law still provides that counties remain responsible for paying their general sessions court judges. *See* Tenn.Code Ann. § 16–15–5006(a) (Supp.1993).

5. Act of Mar. 12, 1951, ch. 555, § 10, 1951 Tenn.Priv.Acts 1666, 1670.

Governor McWherter, acting in accordance with Tenn.Code Ann. § 17–2–116 (Supp. 1993),[6] appointed Ken Witcher, Jr., Macon County's juvenile referee, to serve as special general sessions court judge while Judge Chitwood remained disabled. Judge Witcher took the oath of office on May 30, 1992.

Judge Chitwood remained entitled to his regular salary even though he was unable to perform his duties. Accordingly, Judge Witcher's appointment as special judge placed an unanticipated financial burden on Macon County because the board of commissioners had budgeted for only one general sessions judge's salary. Following a discussion of the problem at the board's June 2, 1992 meeting, the county executive requested that the board amend the county's budget to provide sufficient funds to pay Judge Witcher's salary in addition to Judge Chitwood's.

The issue of Judge Witcher's salary split the board when it met on June 15, 1992. The commissioners initially voted to defer taking action on the budget amendment proposed by the county executive that would have provided funds to pay Judge Witcher. Later in the meeting, by a tie vote, the commissioners failed to adopt a motion to reconsider their original action.

Judge Witcher filed a complaint for a writ of mandamus on June 25, 1992, requesting that the court order the appropriate county officials to pay him the state-mandated general sessions court judge's salary. Twelve of the twenty county commissioners retained counsel and appeared at the hearing on June 25, 1992 to oppose Judge Witcher's complaint.[7] The trial court continued the hearing after determining that Judge Witcher was not entitled to receive his first paycheck until June 30, 1992.

When the hearing reconvened on August 7, 1992, the parties informed the trial court not only that Judge Witcher had still not been paid but also that the board had neither amended the old budget nor enacted a new budget to provide for funds to pay both Judge Chitwood and Judge Witcher. The trial court entered an order on August 21, 1992, directing the board to appropriate funds to pay Judge Witcher's salary while he served as a special general sessions court judge and directing the county executive to issue "timely and proper warrants" to pay Judge Witcher's salary.

## II.

We turn our attention at the outset to the appealing commissioners' assertion that Judge Witcher cannot use a mandamus proceeding to require Macon County to compensate him for his services as a special general sessions judge. The commissioners argue that the mandamus remedy was improper (1) because writs of mandamus cannot be used to collect disputed debts, (2) because Judge Witcher was not entitled to be paid when he first filed his petition, and (3) because Judge Witcher has not exhausted his other legal remedies against the county. We find no merit in these technical arguments.

Writs of mandamus are, to be sure, extraordinary remedies. *Peerless Constr. Co. v. Bass,* 158 Tenn. 518, 522, 14 S.W.2d 732, 733 (1929). While they cannot be used to control official judgment or discretion, *Hackett v. Smith County,* 807 S.W.2d 695, 698 (Tenn.Ct.App.1990), they may be used to compel public officials to perform their non-discretionary duties. *State ex rel. Ledbetter v. Duncan,* 702 S.W.2d 163, 165 (Tenn.1985); *Waters v. State ex rel. Schmutzer,* 583 S.W.2d 756, 763 (Tenn.1979); *Bradley v. State ex rel. Haggard,* 222 Tenn. 535, 540, 438 S.W.2d 738, 740 (1969). Thus, a writ of mandamus is a proper remedy to enforce clear, specific legal rights when the person seeking the writ has no other specific or

6. Tenn.Code Ann. § 17–2–116(a)(1) states, in part:

When any of the judges of the ... courts of general sessions ... is unable from sickness or other physical disability to attend and hold any of the courts at the time and place required by law, the governor shall appoint and commission a special judge who shall have the same qualifications as the regular judge to attend and hold such courts for and during the absence or disability of any such judge.

7. The county executive and eight of the county commissioners elected not to oppose Judge Witcher's petition.

adequate remedy. *State ex rel. Weaver v. Ayers,* 756 S.W.2d 217, 221 (Tenn.1988).

At one time the courts required persons seeking mandamus relief to establish their rights in a separate proceeding before filing their mandamus petition. *Peerless Constr. Co. v. Bass,* 158 Tenn. at 525, 14 S.W.2d at 734. The Tennessee Supreme Court has now relaxed this technical requirement by permitting courts to determine the existence of a duty in the mandamus proceeding itself, *State ex rel. Ledbetter v. Duncan,* 702 S.W.2d at 165; *State ex rel. SCA Chemical Waste Servs., Inc. v. Konigsberg,* 636 S.W.2d 430, 434 (Tenn.1982), and to consider the constitutionality of statutes or ordinances from which a duty is said to derive. *State ex rel. Matthews v. Metropolitan Gov't of Nashville & Davidson County,* 679 S.W.2d 946, 948 (Tenn.1984).

■ Judge Witcher claims that he has a statutory right to be paid a regular general sessions court judge's salary while serving as a special judge and that Macon County has a corresponding obligation to compensate him. His petition, therefore, falls within the scope of *State ex rel. Matthews v. Metropolitan Gov't of Nashville & Davidson County* and *State ex rel. SCA Chemical Waste Servs., Inc. v. Konigsberg.* Thus, both the trial court and this court may consider not only whether a county has a statutory obligation to pay the salary of a special general sessions judge appointed by the Governor to hold court for a disabled regular general sessions judge but also whether the statute empowering the Governor to appoint special general sessions court judges is constitutional.[8]

### III.

■ State law controls Macon County's obligation to pay special general sessions court judges. Counties are political subdivisions of the state, *Claiborne County v. Jennings,* 199 Tenn. 161, 164, 285 S.W.2d 132, 134 (1955), and thus have no authority except that expressly given by or necessarily implied from state law. *Bayless v. Knox County,* 199 Tenn. 268, 281, 286 S.W.2d 579, 585 (1956); *Knox County ex rel. Kessell v. Knox County Personnel Bd.,* 753 S.W.2d 357, 359 (Tenn.Ct.App.1988).

■ Like the counties themselves, county legislative bodies possess only the powers vested in them by the Tennessee Constitution or by state law. *State ex rel. Barksdale v. Wilson,* 194 Tenn. 140, 142–43, 250 S.W.2d 49, 50 (1952). Thus, county legislative bodies may appropriate public funds only for purposes authorized by statute. *Waters v. State ex rel. Schmutzer,* 583 S.W.2d at 764; *City of Harriman v. Roane County,* 553 S.W.2d 904, 906–07 (Tenn.1977).

■ No statute explicitly requires counties to compensate special general sessions court judges appointed in accordance with Tenn. Code Ann. § 17–2–116(a)(1). This obligation, however, must necessarily be implied from the statutes creating the general sessions courts, providing for their funding, and governing the selection not only of regular general sessions judges but also of their temporary replacements. These statutes comprise a single statutory scheme, and related statutes forming a single scheme should be construed together to promote consistency and uniformity. *State ex rel. Metropolitan Gov't of Nashville & Davidson County v. Spicewood Creek Watershed Dist.,* 848 S.W.2d 60, 62 (Tenn.1993); *Westinghouse Elec. Corp. v. King,* 678 S.W.2d 19, 23 (Tenn.1984); *Wayne County v. Tennessee Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 282 (Tenn.Ct. App.1988).

Both Title 5, Chapter 9 and Title 16, Chapter 15 of the Tennessee Code define the scope of a county's obligation to fund the operation of its general sessions court. Tenn.Code Ann. § 16–15–102 (1980) and

---

8. The commissioners raise other technical, procedural arguments against the availability of mandamus under the facts of this case. These arguments are without merit in light of the Supreme Court's admonition against permitting technicalities to interfere with considering mandamus petitions on their merits. *State ex rel. SCA Chemical Waste Servs., Inc. v. Konigsberg,* 636 S.W.2d at 434. Thus, the possible availability of other forms of relief should not undermine Judge Witcher's petition. Similarly, the fact that Judge Witcher filed his petition before he was entitled to receive his first pay check is of little actual significance since the trial court did not issue the writ of mandamus until the time for paying Judge Witcher had passed.

Tenn.Code Ann. § 16–15–5006(a) provide that the expenses of the court, including the judge's salary, shall be paid from the county's general fund. Accordingly, Tenn.Code Ann. § 5–9–401 (1991) directs counties to appropriate funds for all county operations and for all county departments, institutions, and agencies. Tenn.Code Ann. § 5–9–101(15) (1991) specifically empowers the county legislative body to appropriate funds to compensate the general sessions court judge, and Tenn.Code Ann. § 16–15–5006(a) also empowers the county legislative body to impose a litigation tax to "aid in defraying the cost to the counties of paying the general sessions court judges."

State law establishes the minimum salaries for general sessions court judges even though the counties must pay these salaries. Tenn.Code Ann. § 16–15–5003(g) (Supp. 1993). The base salary depends on each county's population. Tenn.Code Ann. § 16–15–5003(a). Judges of general sessions courts with subject matter jurisdiction beyond the basic powers conferred by state law are also entitled to annual salary supplements. Tenn.Code Ann. § 16–15–5003(c). In addition, all general sessions court judges are entitled to receive annual adjustments to their base pay based on changes in the consumer price index. Tenn.Code Ann. § 16–15–5003(f).

Macon County is a "sixth class" county based on its population according to the 1990 decennial census.[9] Tenn.Code Ann. § 16–15–5001(a)(6) (Supp.1993). Accordingly, the base salary for its general sessions court judge is $22,000 plus the annual cost-of-living adjustments made since 1990. Tenn.Code Ann. § 16–15–5003(a)(6), –5003(f). The judge also receives a $5,000 annual salary supplement because the court exercises probate jurisdiction in addition to the general powers conferred by state law.[10] Tenn.Code Ann. § 16–15–5003(c)(1)(B).

State law provides four procedures for selecting temporary judges if a regular general sessions judge cannot hear a case or hold court. Three of these procedures generally apply when the judge is unable to hear a particular case or cannot hold court for a brief but determinate period. See Tenn. Code Ann. § 16–15–209 (1980) (the judge may designate a special judge or the lawyers present may elect a special judge); Tenn. Code Ann. § 17–2–114 (1980) (the judge may request a state trial judge to hear the case). The fourth procedure—the one at issue in this case—permits the Governor to appoint a special judge to hold court for a regular general sessions judge who will be disabled for an indeterminate period.

Counties are not required to compensate special judges appointed in accordance with Tenn.Code Ann. §§ 16–15–209, 17–2–114. Special judges appointed under Tenn.Code Ann. § 16–15–206 are not entitled to be paid. See Waters v. State ex rel. Schmutzer, 583 S.W.2d at 764. Judges hearing the case under Tenn.Code Ann. § 17–2–114 are not entitled to additional compensation because they continue to receive their state salary. However, special judges appointed under Tenn.Code Ann. § 17–2–116 are entitled to be paid because Tenn.Code Ann. § 17–2–117(a) (1980) states that these judges "shall draw the same salary ... as the regular judge...."

■ Since special general sessions court judges appointed under Tenn.Code Ann. § 17–2–116 have a statutory right to draw a salary, the only remaining question is which governmental entity must pay the salary. Even though the statutes do not specifically assign this responsibility, it must necessarily fall on the counties since state law requires them to fund the entire operation of their general sessions courts, including the judge's salary. Making financial provisions to replace a disabled general sessions judge is a necessary and foreseeable part of operating a

---

9. Sixth class counties have between 10,000 and 19,000 residents. Macon County's 1990 population was 15,906.

10. See "Jurisdiction of Courts of General Sessions," Appendix to 1993 Supp., Tenn.Code Ann., vol. 4, at 238. The Macon County General Ses-

sions Court acquired probate jurisdiction in Act of Feb. 25, 1982, ch. 234, 1982 Tenn.Priv.Acts 85. Seven years earlier, the county legislative body rejected a private act that would have empowered the court to hear juvenile cases. Act of May 13, 1975, ch. 152, 1975 Tenn.Priv.Acts 575, 577.

general sessions court. Therefore, the counties must compensate special general sessions court judges appointed under Tenn. Code Ann. § 17–2–116, unless the statute itself is unconstitutional.

## IV.

We now turn to the appealing commissioners' challenges to the constitutionality of Tenn.Code Ann. § 17–2–116. They assert that Tenn.Code Ann. § 17–2–116(a)(1) infringes on a county legislative body's constitutional prerogative to fill vacancies in all county offices. They also assert that the statute infringes on the public's constitutional right to elect their judges and that the statute permits the Executive Branch to exercise powers constitutionally assigned to the Judicial Branch. We find each of these arguments to be without merit.

## A.

The 1978 amendments to the Tennessee Constitution essentially rewrote the prior constitutional provisions dealing with county offices and provided a new framework for the government of Tennessee's counties. *State ex rel. Maner v. Leech,* 588 S.W.2d 534, 537 (Tenn.1979). Prior to 1978, the General Assembly, the local trial courts, and the county legislative bodies shared the power to fill vacant county offices. *See* Tenn. Const. art. 7, § 2 (1870, repealed 1978); Tenn. Const. art. 7, § 4. After 1978, however, the power to fill vacant county offices rested solely with the county legislative body. *See* Tenn. Const. art. 7, § 2.

The drafters of the 1978 amendment to Tenn. Const. art. 7, § 2 intended it to apply broadly to all county offices, not just to the four offices specifically included in its predecessor.[11] Thus, the effect of the 1978 amendment was to invalidate all statutory mechanisms for filling vacant county offices that did not place the responsibility in the hands of the county legislative bodies. The Tennessee Supreme Court reached this conclusion when it held that Tenn. Const. art. 7, § 2 rather than Tenn.Code Ann. § 16–15–210 (amended 1993), provided the procedure for

filling vacancies on the general sessions bench since general sessions court judges were county officers. *State ex rel. Winstead v. Moody,* 596 S.W.2d 811, 814 (Tenn.1980).

The appealing county commissioners assert that appointing a special general sessions court judge to hold court while the incumbent general sessions court judge is disabled is filling a vacancy in a county office for the purpose of Tenn. Const. art. 7, § 2 and Tenn. Const. art. 11, § 17. Thus, our task is to determine the meaning of the word "vacancies" as it appears in the Tennessee Constitution.

The courts are solely responsible for interpreting the Tennessee Constitution. *Metropolitan Gov't of Nashville & Davidson County v. State Bd. of Equalization,* 817 S.W.2d 953, 955 (Tenn.1991); *LaFever v. Ware,* 211 Tenn. 393, 400, 365 S.W.2d 44, 47 (1963). Our role is to derive the peoples' intention from the language of the constitutional provisions themselves. *Hatcher v. Bell,* 521 S.W.2d 799, 803 (Tenn.1974); *Shelby County v. Hale,* 200 Tenn. 503, 510, 292 S.W.2d 745, 748 (1956). We must construe these provisions reasonably in light of the practices and usages that were well-known when the provision was passed, *Ashe v. Leech,* 653 S.W.2d 398, 401 (Tenn.1983); *Peay v. Nolan,* 157 Tenn. 222, 230, 7 S.W.2d 815, 817 (1928), and we must give constitutional terms their ordinary and inherent meaning unless the context requires otherwise. *Gaskin v. Collins,* 661 S.W.2d 865, 867 (Tenn.1983).

The Tennessee Supreme Court has been called on repeatedly to determine what a "vacancy in office" means. It has held that the Constitution of Tennessee uses the term "vacancy" in its ordinary sense and that the term has not taken on any technical or peculiar meaning with the passage of time. *State ex rel. Gann v. Malone,* 131 Tenn. 149, 156, 174 S.W. 257, 259 (1915); *Richardson v. Young,* 122 Tenn. 471, 551, 125 S.W. 664, 683 (1910). It is principally applied to cases where an office is not filled. *State ex rel. Rambo v. Maloney,* 92 Tenn. 62, 71, 20 S.W.

---

11. Tenn. Const. art. 7, § 2 (1870, repealed 1978) applied only to the offices of sheriff, trustee, register, and court clerks to be elected by the people.

419, 422 (1892). Thus, a vacant office is one that is unoccupied or without an incumbent. *Conger v. Roy,* 151 Tenn. 30, 42, 267 S.W. 122, 125 (1924); *State ex rel. Gann v. Malone,* 131 Tenn. at 156–57, 174 S.W. at 259; *Richardson v. Young,* 122 Tenn. at 551, 125 S.W. at 683; *State ex rel. Rambo v. Maloney,* 92 Tenn. at 72, 20 S.W. at 422.

■ The office of general sessions court judge for Macon County was not vacant in 1992 because it had an incumbent. Even though Judge Chitwood was unable to perform his duties, he was still the duly elected and qualified Macon County general sessions court judge. He was the incumbent general sessions court judge, and a single public office cannot have two incumbents at the same time. Thus, the Governor was not filling a vacant office when he appointed Judge Witcher to serve while Judge Chitwood was disabled; he was merely providing a temporary replacement. It follows, therefore, that Tenn.Code Ann. § 17–2–116(a)(1) does not violate Tenn. Const. art. 7, § 2 or Tenn. Const. art. 11, § 17 since neither constitutional provision applies to the designation of temporary special general sessions court judges who substitute for but do not replace the incumbent judge.

## B.

The appealing commissioners also insist that Tenn.Code Ann. § 17–2–116(a)(1) is contrary to Tenn. Const. art. 6, § 4's requirement that judges "shall be elected by the qualified voters of the district or circuit to which they are assigned."[12] This argument is also without merit because Tenn. Const. art. 6, § 4 must be read in conjunction with Tenn. Const. art. 6, § 11.

The Constitution of 1796 did not contain a specific provision for filling judicial vacancies. In 1827 the General Assembly enacted a statute empowering the Governor to appoint special judges to hold court for any circuit judge who was unable to attend court "from sickness or any bodily indisposition or infirmity."[13] Even though the General Assembly repealed the statute in 1831,[14] the Tennessee Supreme Court found that it infringed on the General Assembly's constitutional prerogative to appoint judges.[15] *Smith v. Norment,* 13 Tenn. (5 Yerg.) 271, 274–75 (1833).

Tennessee's judiciary fell into disrepute in the early part of the nineteenth century because of delays in disposing of cases, some judges' failure to attend court, and allegations of official misconduct on the part of other judges. *See* 2 Robert H. White, *Messages of the Governors of Tennessee* 292 (1952) ("White"). The Senate Judiciary Committee issued a report in 1829 concluding that "the judiciary system of Tennessee [is] the most expensive and least efficient of any in the United States." *See* 1829 Senate Journal 332. This report lead to efforts in 1829 and again in 1831 to remove all state judges from office. *See* 1829 House Journal 635; White, *supra,* at 357.

The continuing public unrest concerning the state judiciary was one of the motivating factors for the constitutional convention of 1834. Lewis Laska, *A Legal and Constitutional History of Tennessee, 1772–1972,* 6 Mem.St.U.L.Rev. 563, 603 (1976). The convention produced Tenn. Const. art. 6, § 11 (1835, amended 1870) which was later approved on March 27, 1835. This amendment empowered the General Assembly to establish a procedure for selecting special judges whenever a regular judge was unable to serve.[16] The General Assembly promptly en-

---

**12.** The commissioners also rely on Tenn. Const. art. 1, § 8 for the proposition that judges must be popularly elected. Their reliance on this section is misplaced; the "law of the land" clause does not require judges to be elected.

**13.** Act of Dec. 5, 1827, ch. 37, § 1, 1827 Tenn. Pub.Acts 36.

**14.** Act of Dec. 20, 1831, ch. 47, § 1, 1831 Tenn. Pub.Acts 72.

**15.** Tenn. Const. art. 5 § 2 (1796, repealed 1834) provided that "[t]he general assembly shall by joint ballot of both houses appoint judges of the several courts of law and equity ... who shall hold their respective offices during good behavior."

**16.** The 1835 version of Art. 6, § 11 provided: "In case of sickness of any of the judges of the supreme or inferior courts, so that they or any of them are unable to attend, the legislature shall be authorized to make provision by the general laws, that special judges may be appointed to attend said courts." *See* Wallace McClure, *State Constitution–Making* 428–30 (1916).

acted a statute empowering the Governor to appoint special judges to hold court for regular judges who were "unable from sickness or other physical disability to attend and hold any of the courts." Act of Feb. 2, 1836, ch. 68, § 3, 1835–36 Tenn.Pub. Acts 176.[17]

The Constitution of 1870 retained most of the main features of the Constitution of 1835. *Gold v. Fite,* 61 Tenn. (2 Baxt.) 237, 243 (1872). Like its earlier counterpart, the Constitution of 1870 included a provision specifically authorizing the General Assembly to establish a procedure for appointing special judges. Thus, Tenn. Const. art. 6, § 11 now states that "[t]he Legislature may by general laws make provision that special judges may be appointed, to hold any Courts the Judge of which shall be unable or fail to attend or sit; or to hear any cause in which the Judge may be incompetent."

The Supreme Court has construed both the 1835 and the 1870 versions of Tenn. Const. art. 6, § 11 to permit the Governor to make temporary judicial appointments. *Gold v. Fite,* 61 Tenn. at 245; *Calloway v. Sturm,* 48 Tenn. (1 Heisk.) 764, 767 (1870). The Court has likewise specifically upheld the General Assembly's decision to authorize the Governor to appoint temporary county judges. *State ex rel. Smiley v. Glenn,* 54 Tenn. (7 Heisk.) 472, 494 (1872). Accordingly, Justice Wilkes observed in 1899 that the Constitutions of 1835 and 1870 repudiated *Smith v. Norment* and clothed the General Assembly with broad powers over the judiciary. *The Judges' Cases,* 102 Tenn. 509, 569–70, 53 S.W. 134, 148–49 (1899) (Wilkes, J. dissenting).

■ The courts must construe the Constitution of Tennessee as a whole, *Vollmer v. City of Memphis,* 792 S.W.2d 446, 448 (Tenn. 1990); *Davis v. Williams,* 158 Tenn. 34, 47, 12 S.W.2d 532, 535 (1928), and must seek to harmonize and give effect to all its various provisions. *Patterson v. Washington County,* 136 Tenn. 60, 66, 188 S.W. 613, 614 (1916).

Thus, we must construe Tenn. Const. art. 6, § 4 and related provisions in light of Tenn. Const. art. 6, § 11.

■ The purpose of Tenn. Const. art. 6, § 4 is to identify the persons who should elect Tennessee's judges. It is not intended to prevent judges from sitting by interchange or to prevent the Governor from appointing temporary special judges. *The Judges' Cases,* 102 Tenn. at 546–47, 53 S.W. at 143. Thus, the general language of Tenn. Const. art. 6, § 4 does not undermine Tenn. Const. art. 6, § 11's specific provision authorizing the General Assembly to enact statutory procedures for selecting special judges. Tenn. Code Ann. § 17–2–116(a)(1) is entirely consistent with Tenn. Const. art. 6, § 11, and therefore judicial appointments conforming to the statute do not run afoul of Tenn. Const. art. 6, § 4.

### C.

■ The commissioners' last constitutional assault on Tenn.Code Ann. § 17–2–116(a)(1) is that the statute violates the separation of powers provisions in Tenn. Const. art. 2, §§ 1 and 2. We fail to perceive how authorizing the Governor to appoint special judges to hold court for disabled judges gives either the Legislative or the Executive Branches "arbitrary power over the judiciary."

Tenn. Const. art. 6, § 11 empowers the General Assembly to enact statutes governing the selection of special judges. The General Assembly exercised its constitutional authority by enacting a statute empowering the Governor to appoint special judges, and the Governor has exercised this prerogative for over 150 years. Until 1980, the Governor exercised similar power over filling vacancies in all judicial offices.

■ The power to elect or to appoint a person to a public office is essentially a political power. It is neither inherently legislative, executive, nor judicial. *Davis v.*

---

17. This act originally applied to judges of the Supreme Court and to the judges of the circuit and chancery courts; however, Section 3927 of the Code of 1858 expanded it to include "county courts." The General Assembly added criminal courts and other special courts in 1941. Act of Jan. 31, 1941, ch. 28, § 1, 1941 Tenn.Pub.Acts 113. The General Assembly later specifically included general sessions courts in 1978 to implement the 1978 amendments to the Tennessee Constitution. Act of April 27, 1978, ch. 934, § 36, 1978 Tenn.Pub.Acts 1428, 1452.

*Williams,* 158 Tenn. at 44, 12 S.W.2d at 534; *Richardson v. Young,* 122 Tenn. at 497, 125 S.W. at 669. Accordingly, appointing a special judge to hold court for a disabled judge is not exercising a power belonging exclusively to the Judicial Branch.

## V.

As a final matter, the appealing commissioners assert that they should not be required to compensate Judge Witcher because he did not prove all the circumstances that must exist in order to permit the Governor to appoint a special judge under Tenn.Code Ann. § 17–2–116. We do not agree. To the contrary, we find that the commissioners have not shouldered their burden of proving that Judge Witcher was not properly serving as a special general sessions court judge.

■■■ Judge Witcher's proof supporting his petition for a writ of mandamus included testimony that he had received a letter from Governor McWherter dated May 29, 1992, appointing him special judge for the Macon County General Sessions Court, that he had taken the oath of office on May 30, 1992, and that he has been serving as a special judge ever since. This evidence is sufficient to make out a prima facie case in favor of Judge Witcher's right to hold office. *See Tomlinson v. Darnall,* 39 Tenn. (2 Head) 538, 541 (1859) (proof of the undisturbed exercise of a public office raises a rebuttable presumption that the office holder has been duly appointed).

The commissioners offered no proof of their own concerning Judge Chitwood's illness or Judge Witcher's appointment. Instead, they sought to undermine Judge Witcher's proof by asserting that the Governor's May 29, 1992 letter was inadmissible hearsay. Without the letter, they argue that the record contains no proof that Judge Chitwood certified his disability to the Governor or that the Governor has, in fact, appointed Judge Witcher as the special general sessions court judge.

■■■■ The Governor's letter to Judge Witcher is a public record of one of the Governor's official acts and is, therefore, admissible under Tenn.R.Evid. 803(8). The letter recites that Judge Witcher's appointment was based on Tenn.Code Ann. § 17–2–116 and that it would "continue during the period of disability of Judge James E. Chitwood." Public officials like the Governor are presumed to perform their duties in good faith, *Williams v. American Plan Corp.,* 216 Tenn. 435, 441, 392 S.W.2d 920, 923 (1965); *Cummings v. Beeler,* 189 Tenn. 151, 159, 223 S.W.2d 913, 916 (1949), and are also presumed to know and act in accordance with the law. *See Dixon v. McClary,* 209 Tenn. 81, 91, 349 S.W.2d 140, 145 (1961).

■■■ We can reliably conclude from the contents of the Governor's letter that Judge Chitwood was disabled [18] and that he had certified his disability to the Governor. These two conclusions provide all the conditions necessary for appointing a special judge in accordance with Tenn.Code Ann. § 17–2–116. Accordingly, the record contains sufficient evidence to demonstrate that the Governor properly appointed Judge Witcher to serve as the special judge during Judge Chitwood's disability and that Judge Witcher was entitled to the regular general sessions court judge's salary while serving as special judge.

## VI.

We find all the issues raised by the appealing commissioners to be without merit and, therefore, affirm the order directing the Macon County Board of Commissioners to appropriate sufficient funds to pay Judge Witcher's salary and directing the county executive to issue timely and proper warrants to compensate Judge Witcher for his services. We decline to find that this appeal is frivolous and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Macon County.

TODD, P.J., and CANTRELL, J., concur.

---

18. The commissioners' counsel even conceded during the August 7, 1992 hearing that Judge Chitwood had been hospitalized and that it had appeared for a period of time that he might not survive.