IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 26, 2001

## EDDIE COOLEY v. JOE MAY

**Appeal from the Circuit Court for Sequatchie County**
**No. 7367      Buddy D. Perry, Judge**

---

**No. M2001-01162-COA-R3-CV - Filed December 28, 2001**

---

This appeal involves a state prisoner's efforts to obtain an accounting for the sentence credits he earned while incarcerated in the Sequatchie County Jail. After the prisoner discovered that the Tennessee Department of Correction had received no information from the Sheriff of Sequatchie County regarding his sentence credits, he filed a petition for writ of mandamus in the Circuit Court for Sequatchie County seeking to compel the sheriff to calculate his sentence credits and forward the information to the Department. The sheriff filed a pro se response asserting that the prisoner forfeited any sentence credits he may have earned by violating his parole. Thereafter, the District Attorney General for the Twelfth Judicial District moved to dismiss the prisoner's petition for lack of subject matter jurisdiction. The trial court granted the motion and dismissed the petition. The prisoner has now appealed. We have determined that the trial court erred by concluding that it lacked subject matter jurisdiction to consider the prisoner's petition. Accordingly, we reverse and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Eddie Cooley, Pikeville, Tennessee, Pro Se.

**OPINION**

**I.**

Eddie Cooley is a career criminal. In January 1991, he was convicted of escape, theft of property, and aggravated assault, and the Circuit Court for Sequatchie County sentenced him to serve ten years in the custody of the Tennessee Department of Correction. Mr. Cooley was paroled in December 1993. Within days after his release, Mr. Cooley committed an aggravated assault. On December 22, 1993, the Board of Paroles issued a parole violation warrant, and Mr. Cooley was arrested and incarcerated in the Sequatchie County Jail. The Board later revoked Mr. Cooley's parole.

Mr. Cooley remained in the Sequatchie County Jail following the revocation of his parole rather than being returned to the Department of Correction. According to Mr. Cooley, the Sheriff of Sequatchie County asked him to work as a trusty and promised him that he would earn two days of sentence reduction credits for every day he performed routine maintenance tasks as assigned. Accordingly, Mr. Cooley began washing county vehicles, maintaining the property around the jail, and performing maintenance work on county vehicles. According to Mr. Cooley, he also performed personal work for the Sheriff, including hauling firewood to the Sheriff's cabin, repairing the roof of the Sheriff's barn, and performing maintenance work on vehicles owned by the Sheriff and his friends.[1]

After serving 485 days in the Sequatchie County Jail, Mr. Cooley was again paroled on April 20, 1995. Four days after Mr. Cooley's release, the Board of Paroles issued another parole violation warrant. Mr. Cooley assaulted his parole officer and the Chief Deputy Sheriff of Sequatchie County when they served him with the warrant on June 12, 1995. Mr. Cooley was returned to custody, and on April 28, 1997, was convicted of aggravated assault and sentenced to four years to be served consecutively with his prior sentence. On this occasion, Mr. Cooley was incarcerated in a state correctional facility rather than the Sequatchie County Jail.

In 1999 Mr. Cooley inquired into the Department of Correction's calculation of his sentence reduction credits and learned for the first time that the Department had received no information from the Sheriff of Sequatchie County regarding the sentence credits he earned while incarcerated in the Sequatchie County Jail. Accordingly, on October 4, 1999, he filed a petition for writ of mandamus in the Circuit Court for Sequatchie County requesting the court to order the Sheriff of Sequatchie County to calculate his sentence credits and forward the information to the Department of Correction. Eventually, the Sheriff filed a pro se answer asserting that he had mailed a "computation" of Mr. Cooley's sentence reduction credits to the Department of Correction.[2]

Mr. Cooley's petition languished in the trial court for over one year, apparently because Mr. Cooley was unaware of Local Rule IX(a) that required the moving party on any civil motion or non-jury trial to file a "request to docket" on an approved form at least seven days before the requested hearing date.[3] Finally in August 2000, Mr. Cooley filed a "petition for fast and speedy hearing." When the trial court did not act on this petition, Mr. Cooley filed an application for an extraordinary appeal with this court requesting an order directing the trial court to set a hearing in his case. We denied Mr. Cooley's Tenn. R. App. P. 10 application after concluding, based on the record provided

---

[1] This sort of work, if it occurred, is a clear violation of Tenn. Code Ann. § 41-2-148(a) (1997).

[2] The document purporting to be the Sheriff's "computation" of Mr. Cooley's sentence reduction credits was attached to the answer. It is dated December 28, 1999 – over four years after Mr. Cooley's release from the Sequatchie County Jail. The Sheriff's answer did not include the certificate of service required by Tenn. R. Civ. P. 5.03, and it appears from this record that the Sheriff failed to provide a copy of his answer to Mr. Cooley. On January 26, 2000, Mr. Cooley asked the Clerk of the Circuit Court for Sequatchie County about the status of his petition because he had received no response from the Sheriff.

[3] On at least two occasions when Mr. Cooley inquired about the status of his petition, the clerk of the trial court did not inform Mr. Cooley of Local Rule IX(a).

us at the time, that the trial court had not so far departed from the accepted and usual course of judicial proceedings as to require immediate review.[4]

Mr. Cooley eventually discovered Local Rule IX(a) and filed a request that his case be placed on the trial court's January 22, 2001 non-jury docket. The case was, however, not set. Instead, on February 5, 2001, the District Attorney for the Twelfth Judicial District filed a motion to dismiss Mr. Cooley's petition on the ground that the trial court lacked subject matter jurisdiction. The trial court, stating that it was not informed of the existence of this case until January 22, 2001, granted the motion and, on February 22, 2001, filed an order dismissing Mr. Cooley's petition. Mr. Cooley filed a timely notice of appeal. While Mr. Cooley has filed a brief, the Sheriff has repeatedly refused to do so or to make any other appearance in this court.[5]

## II.
### THE STANDING OF THE DISTRICT ATTORNEY GENERAL

Before addressing the substance of Mr. Cooley's appeal, we turn our attention to a preliminary question relating to the District Attorney General's appearance in this case. We are frankly puzzled about the basis for permitting the District Attorney General, on behalf of the State of Tennessee, to become involved in what is essentially a civil action against a county official.[6] Even though Mr. Cooley did not raise this issue in his brief, we take it up under Tenn. R. App. P. 13(b) in order to prevent injury to the public interest and prejudice to the judicial process.

Standing, as a general matter, is a judge-made doctrine used to determine whether a party is entitled to the judicial relief it seeks. An inquiry into standing requires the court to determine whether the party seeking relief has alleged a sufficiently personal stake in the outcome of the litigation to warrant the exercise of judicial power on the party's behalf. *Metropolitan Air Research Testing Auth., Inc. v. Metropolitan Gov't*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992); *Browning-Ferris Indus. of Tennessee, Inc. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982). The primary focus of a standing inquiry is on the party, not on the merits of the claim. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484, 102 S. Ct. 752, 765 (1982); *Flast v. Cohen*, 392 U.S. 83, 99, 88 S. Ct. 1942, 1952 (1968).

---

[4] *Cooley v. May*, No. M2000-02630-COA-R10-CV (Tenn. Ct. App. Nov. 2, 2000).

[5] On August 6, 2001, this court granted the Sheriff thirty days within which to file a brief. When the Sheriff did not respond, we filed an order on September 14, 2001 directing the Sheriff to show cause why this case should not be decided on Mr. Cooley's brief alone in accordance with Tenn. R. App. P. 29(c). After the Sheriff failed to respond to this order, we directed that the case be submitted on the record and Mr. Cooley's brief.

[6] The Attorney General and Reporter must have had the same qualms about the District Attorney General's participation in this case. When the record in this case was filed with this court, the clerk forwarded the record to the Office of the Attorney General for the preparation of a brief. However, the Office of the Attorney General returned the record along with a letter stating that the record must have been sent by mistake because "[a]lthough this case involves a state prisoner, the only respondent was Joe May, who is the sheriff of Sequatchie County. . . . There were no state officers or employees served with summons in this matter and this Office did not appear in any of the proceedings below."

This proceeding does not fall within any of the District Attorney General's statutorily prescribed powers. The District Attorney General was neither asked for an opinion on the Sheriff's duties under the criminal law[7] nor to prosecute a violation of a county ordinance.[8] Like the Attorney General and Reporter, we can perceive no State interest in a mandamus proceeding against a county official sufficient to require the District Attorney General to appear with, or on behalf of, the Attorney General and Reporter under Tenn. Code Ann. § 8-7-103(3). In addition to the lack of explicit statutory authority, we know of no implied, inherent, or common-law power that would justify the District Attorney General's appearance in this case rather than the county attorney. Accordingly, we conclude that the District Attorney General did not have standing to file a motion to dismiss Mr. Cooley's petition for writ of mandamus.

Our conclusion that the trial court should not have considered the District Attorney General's motion does not necessarily end the matter. Even if we were to disregard the District Attorney General's motion, the question of subject matter jurisdiction is one that the trial court could have and should have raised on its own motion. *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988); *Tritschler v. Cartwright*, 46 Tenn. App. 662, 665, 333 S.W.2d 6, 8 (1959); *Ward v. Lovell*, 21 Tenn. App. 560, 563, 113 S.W.2d 759, 760 (1938). Accordingly, for the purpose of this appeal, we will consider the question of subject matter jurisdiction as if the trial court had raised it on its own motion.

### III.
### THE TRIAL COURT'S SUBJECT MATTER JURISDICTION

We now turn to the question of the trial court's jurisdiction. The trial court, characterizing this case as one involving "disputed sentence reduction credits," determined that it lost its "authority to act" after Mr. Cooley was sentenced and that it was required to "defer to the Department of Correction on sentencing credit issues." This case, however, does not involve a dispute between Mr. Cooley and the Department of Correction regarding the calculation of Mr. Cooley's sentence reduction credits.

The concept of subject matter jurisdiction involves a court's power to adjudicate a particular controversy brought before it. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *Turpin v. Conner Bros. Excavating Co.*, 761 S.W.2d 296, 297 (Tenn. 1988); *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, ___ S.W.3d ___, 2001 WL 459092, at *4 (Tenn. Ct. App. May 2, 2001). Courts derive their subject matter jurisdiction from the Constitution of Tennessee or from legislative act, *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996)*; Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977), and cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999).

---

[7]Tenn. Code Ann. § 8-7-103(4) (Supp. 2001).

[8]Tenn. Code Ann. § 8-7-112 (Supp. 2001).

A court's subject matter jurisdiction in a particular circumstance depends on the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994); *P.E.K. v. J.M.*, 52 S.W.3d 653, 658 (Tenn. Ct. App. 2001); *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000). It does not depend on the conduct or agreement of the parties. *Shelby County v. City of Memphis*, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963); *James v. Kennedy*, 174 Tenn. 591, 595, 129 S.W.2d 215, 216 (1939). Thus, the parties cannot confer subject matter jurisdiction on a trial or an appellate court by appearance, plea, consent, silence, or waiver. *State ex rel. Dep't of Social Servs. v. Wright*, 736 S.W.2d 84, 85 n.2 (Tenn. 1987); *Caton v. Pic-Walsh Freight Co.*, 211 Tenn. 334, 338, 364 S.W.2d 931, 933 (1963); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d at 480.

Tenn. Code Ann. § 29-25-101 (2000) states succinctly that "[c]ircuit judges and chancellors have power to issue writs of mandamus, upon petition or bill, supported by affidavit."[9] In light of this statute, all circuit courts, including the Circuit Court for Sequatchie County, clearly have subject matter jurisdiction to issue writs of mandamus in appropriate cases. Thus, the trial court erred when it concluded that it lacked subject matter jurisdiction to consider and act upon Mr. Cooley's petition for writ of mandamus.

The trial court's mistaken view of its subject matter jurisdiction appears to have been influenced by its reliance on an unreported Tennessee Court of Criminal Appeals decision involving a prisoner who filed suit against a sheriff seeking an order directing the sheriff to award him fifty-two days of sentence credits. Despite affirming the trial court's order directing the sheriff to credit the prisoner with fifty-two days of sentence credits for the time the inmate spent in the county jail, the court stated that "[a]s a general rule, the trial court's authority to act upon credits ends upon the sentence to the Department of Correction" and, therefore, that "the trial court should generally defer to the Department of Correction on sentencing credit issues." *Finlaw v. Anderson County Jail*, No 03C01-9212-CR-00448, 1993 WL 310312, at *2 (Tenn. Crim. App. Aug. 13, 1993) (No Tenn. R. App. P. 11 application filed).

_____

[9]Mr. Cooley's petition for writ of mandamus was neither sworn to nor supported by an affidavit, although the signature on his petition was apparently notarized. While this court does not make a habit of excusing pro se litigants from complying with the substantive and procedural rules, *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995), we give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 397 (Tenn. Ct. App. 1997). Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9-10, 101 S. Ct. 173, 176 (1980); *Baxter v. Rose*, 523 S.W.2d 930, 939 (Tenn. 1975); *Winchester v. Little*, 996 S.W.2d 818, 824 (Tenn. Ct. App. 1998). These litigants are entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). Because neither the trial court nor the Sheriff has taken issue with Mr. Cooley's failure to comply with Tenn. Code Ann. § 29-25-101, we conclude that they have waived their opportunity to challenge his petition on the ground that it is not verified.

The trial court's reliance on the *Finlaw v. Anderson County Jail* decision is misplaced for two reasons. First, the relief sought in the cases is fundamentally different. Unlike Mr. Finlaw, Mr. Cooley is not requesting the courts to grant him sentence credits. He is simply requesting judicial relief in the form of an order directing the Sheriff of Sequatchie County to comply with his legal duty to forward to the Department of Correction its records regarding his sentence credits for the period of his incarceration in the Sequatchie County Jail from December 22, 1993 until April 20, 1995.

The second reason why the trial court should not have relied on *Finlaw v. Anderson County Jail* is that the opinion does not hold that the trial court lacked subject matter jurisdiction to consider Mr. Finlaw's petition. The court concluded that Mr. Finlaw's papers had been erroneously labeled as a petition for mandamus and that the trial court should not have granted Mr. Finlaw the relief he requested. Had the Court of Criminal Appeals concluded that the trial court lacked subject matter jurisdiction to consider Mr. Finlaw's petition, it would have had no choice other than to vacate the trial court's judgment because it would have been void as a matter of law. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955) (holding that orders and judgments entered without subject matter jurisdiction are void); *see also Riden v. Snider*, 832 S.W.2d 341, 343 (Tenn. Ct. App. 1991); *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988).

**IV.**
**MR. COOLEY'S STATEMENT OF A CLAIM FOR WHICH RELIEF CAN BE GRANTED**

To avoid any further delay in addressing Mr. Cooley's petition, we will review Mr. Cooley's petition to determine whether he has stated a claim upon which relief can be granted. We take this step because, if Mr. Cooley has not stated a claim upon which mandamus relief can properly be granted, we can affirm the dismissal of his petition on grounds other than those relied upon by the trial court.[10] We have determined that Mr. Cooley's petition is not subject to dismissal under Tenn. R. Civ. P. 12.02(6).

A writ of mandamus is an extraordinary remedy. *Peerless Constr. Co. v. Bass*, 158 Tenn. 518, 522, 14 S.W.2d 732, 733 (1929); *State ex rel. Witcher v. Bilbrey*, 878 S.W.2d 567, 570 (Tenn. Ct. App. 1994). Its purpose is to enforce a clearly established legal right,[11] *State v. Irick*, 906 S.W.2d 440, 442 (Tenn. 1995); *State ex rel. Ragsdale v. Sandefur*, 215 Tenn. 690, 696, 389 S.W.2d 266, 269 (1965), or to compel a public official to perform his or her legal duties. *State ex rel. Ledbetter v.*

---

[10] The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

[11] At one time, persons seeking a writ of mandamus were required to establish their rights in a separate proceeding. Persons may now establish their right in the context of the mandamus proceeding itself. *State ex rel. Ledbetter v. Duncan*, 702 S.W.2d 163, 165 (Tenn 1985); *State ex rel. SCA Chem. Waste Servs., Inc. v. Konigsberg*, 636 S.W.2d 430, 434 (Tenn. 1982); *State ex rel. Witcher v. Bilbrey*, 878 S.W.2d at 571.

*Duncan*, 702 S.W.2d at 165; *Tusant v. City of Memphis*, 56 S.W.3d 10, 18 (Tenn. Ct. App. 2001).[12] A writ of mandamus should be granted only when the party seeking it has no other specific remedy to enforce its right. *Meighan v. US Sprint Communications Co.*, 942 S.W.2d 476, 479 (Tenn. 1997); *Hayes v. Civil Serv. Comm'n*, 907 S.W.2d 826, 828 (Tenn. Ct. App. 1995).

Mandamus cannot be used to control a public official's judgment or discretion. *State ex rel. Harned v. Meador*, 153 Tenn. 634, 640, 284 S.W. 890, 892 (1926); *Hackett v. Smith County*, 807 S.W.2d 695, 698 (Tenn. Ct. App. 1990). Thus, the writ cannot be used to compel a public official to perform a discretionary act or to perform a discretionary act in a particular way. *State ex rel. Byram v. City of Brentwood*, 833 S.W.2d 500, 505 (Tenn. Ct. App. 1991). Likewise, if the act is not discretionary, a writ of mandamus cannot be used to affect a public official's judgment regarding the details of his or her performance of the act. *Bradley v. State ex rel. Haggard*, 222 Tenn. 535, 540, 438 S.W.2d 738, 740 (1969). Therefore, a writ of mandamus is proper when nothing is left to the public official's judgment. *Tusant v. City of Memphis*, 56 S.W.3d at 18.

For Mr. Cooley's petition to state a claim upon which relief can be granted, his petition must demonstrate either that he has a clearly established legal right or, conversely, that the Sheriff of Sequatchie County has a non-discretionary duty to perform an act that would benefit him. In this case, both the right and the duty involve the Sequatchie County Sheriff's duty to report to the Department of Correction any sentence credits Mr. Cooley may have earned while incarcerated in the Sequatchie County Jail. Accordingly, Mr. Cooley's complaint should be reviewed with the following questions in mind: (1) Was Mr. Cooley entitled to earn sentence credits while he was incarcerated in the Sequatchie County Jail? (2) Did Mr. Cooley earn any sentence credits while he was incarcerated in the Sequatchie County Jail? (3) Did the Sheriff of Sequatchie County have a non-discretionary legal duty to provide information regarding Mr. Cooley's sentence credits to the Department of Correction? and (4) Did the Sheriff of Sequatchie County provide the appropriate information to the Department of Correction?[13]

According to the allegations in Mr. Cooley's petition, he was a state prisoner being housed in the Sequatchie County Jail.[14] As a state prisoner housed in a county jail, he was entitled to earn two days of sentence reduction credit for every day he worked pursuant to Tenn. Code Ann. § 41-2-146(b) (1997) and Tenn. Code Ann. § 41-21-236(d).[15] Likewise, according to Mr. Cooley's

---

[12]These duties may be imposed by the federal or state constitution, statutes, private acts, city charters, or city ordinances. *State ex rel. Hayes v. Civil Serv. Comm'n*, No. 01A01-9002-CH-00061, 1990 WL 165073, at *3 (Tenn. Ct. App. Oct. 31, 1990), *perm. app. denied* (Tenn. May 26, 1992).

[13]This question is relevant because a writ of mandamus cannot be used to compel a public official to perform an act that he or she has already performed. *State ex rel. Robinson v. Hutcheson*, 180 Tenn. 46, 53, 171 S.W.2d 282, 285 (1943).

[14]At the time of his incarceration in the Sequatchie County Jail, Mr. Cooley was serving the remainder of his ten-year sentence for his 1991 convictions for escape, theft of property, and aggravated assault.

[15]The Sheriff of Sequatchie County did not contest this assertion.

complaint, he performed work for which he was entitled to sentence reduction credits while he was incarcerated in the Sequatchie County Jail.[16]

Mr. Cooley also alleges that the Sheriff of Sequatchie County has a legal duty to provide the Department of Correction with reports concerning the accrual of these credits.[17] For these purposes, the Sheriff of Sequatchie County is deemed to be a "warden," Tenn. Code Ann. § 41-21-236(d), and is, therefore, required to keep written records on a monthly basis of the sentence reduction credits a prisoner has earned. Tenn. Code Ann. § 41-21-236(a)(3). Because prisoners may become ineligible to earn sentence reduction credits[18] and may also be deprived of sentence reduction credits they have already earned,[19] these records must reflect any actions that either render a prisoner ineligible to earn sentence credits or deprive a prisoner of previously earned sentence reduction credits. Although no statute or rule expressly requires a sheriff housing a state prisoner to send an accounting of a prisoner's sentence reduction credits to the Department of Correction, this obligation is a necessary part of Tenn. Code Ann. § 41-21-236(a)(3). It would be nonsensical to allow state prisoners to earn sentence reduction credits while they are incarcerated in a county jail but then not to require a sheriff to inform the Department of Correction – the legal custodian of the prisoner – how many sentence reduction credits the prisoner had earned or forfeited on a monthly basis.

Based on the allegations in Mr. Cooley's petition, he has stated a claim for which mandamus would be the appropriate relief. He has demonstrated that he was eligible to earn sentence credits and did, in fact, earn sentence credits while incarcerated in the Sequatchie County Jail. He also alleged that the Sheriff of Sequatchie County had a duty to account for these credits to the Department of Correction and that the Sheriff had failed to do so. These allegations, if substantiated, would justify issuing a writ of mandamus directing the Sheriff of Sequatchie County to file with the Department of Correction the sort of accounting of sentence reduction credits that is required by state law.

## V.
### THE SHERIFF'S DEFENSE

The Sheriff of Sequatchie County's principle argument in his answer to the motion for default judgment was that he had already computed Mr. Cooley's sentence reduction credits and had forwarded this information to the Department of Correction. We have reviewed the purported computation attached to the Sheriff's answer and find it to be no computation at all and certainly not the sort of computation envisioned by Tenn. Code Ann. § 41-21-236(a)(3).

---

[16] The Sheriff of Sequatchie County did not contest this assertion.

[17] Not only did the Sheriff of Sequatchie County not contest this assertion, he conceded that he had a duty to make these reports by stating in his answer to the motion for default judgment that he had made this computation and had sent it to the Department of Correction.

[18] Tenn. Code Ann. § 41-21-236(b)(7).

[19] Tenn. Code Ann. § 41-21-236(a)(5), (6).

This document – apparently prepared long after Mr. Cooley was incarcerated in the Sequatchie County Jail – is simply a chronological listing of the dates when Mr. Cooley was paroled, the dates of the issuance and service of the parole violation warrants, the dates of Mr. Cooley's parole revocation hearings, and the dates when Mr. Cooley's parole was revoked. It contains no information regarding the number of days of sentence reduction credits Mr. Cooley earned while incarcerated in the Sequatchie County Jail or the basis for depriving him of sentence reduction credits he had already earned. Accordingly, on its face, the Sheriff's December 28, 1999 letter to the Department of Correction is not the type of report regarding sentence reduction credits that the Sheriff had a legal duty to file.

As we read the Sheriff of Sequatchie County's December 28, 1999 letter, he is intent on depriving Mr. Cooley of the sentence credits he may have earned between December 22, 1993 and April 20, 1995 because of Mr. Cooley's conduct after he was released from the Sequatchie County Jail in April 1995.[20] Invoking Tenn. Code Ann. § 41-21-236(a)(3), (a)(5), and (e)(3), the Sheriff argues that Mr. Cooley does not have a right to sentence credits and does not have the right to appeal determinations regarding the number of sentence credits he has earned. We fail to understand how these statutes permit the deprivation of already earned sentence reduction credits based on conduct occurring after a prisoner is released or how these statutes would excuse the Sheriff of Sequatchie County from his legal duty to account to the Department of Correction for Mr. Cooley's sentence reduction credits earned or lost during his incarceration in the Sequatchie County Jail.

## VI.

We reverse the order dismissing Mr. Cooley's petition for writ of mandamus and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Joe May, the Sheriff of Sequatchie County, for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[20] After Mr. Cooley was paroled on April 4, 1995, he committed an act that caused the Board of Paroles to issue a parole violation warrant. When his parole officer and the chief deputy sheriff served this warrant on Mr. Cooley on June 12, 1995, Mr. Cooley assaulted them. He was later convicted of aggravated assault.