IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 20, 2015 Session


# SHERRIE L. DURHAM v. BILL HASLAM, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 14C2598     Walter C. Kurtz, Judge**

_____

**No. M2014-02404-COA-R3-CV – Filed April 1, 2016**

_____


Plaintiff filed a complaint against the Governor, all state appellate court judges, the Tennessee Republican Party, and the Tennessee Democratic Party in which she alleges, *inter alia*, that the Tennessee Plan and statutes providing for the appointment of special and senior judges violate her state and federal constitutional rights. The defendants filed motions to dismiss, arguing that Plaintiff lacked standing and failed to state a claim for which relief can be granted. The trial court granted the motions to dismiss, and Plaintiff appeals. We affirm the trial court's judgment dismissing Plaintiff's complaint.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, S.J., delivered the opinion of the Court, in which BUDDY PERRY, S.J., and MIKE JONES, S.J., joined.

Sherrie Durham, Mount Juliet, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; and Janet M. Kleinfelter, Deputy Attorney General; for the appellee, Bill Haslam, in his official capacity as Governor of the State of Tennessee, et al.

---

[1]After oral argument, Ms. Durham filed a motion for all special judges on this panel to recuse themselves. We each separately declined. Ms. Durham then sought full court review of our denials. Pursuant to Section 1.02 of Rule 10B of Rules of the Tennessee Supreme Court, we took no further action in the case, pending final determination of the recusal issues.

# OPINION

## I. Procedural Background

On June 25, 2014, Sherrie L. Durham filed a complaint against Governor Bill Haslam, the Justices of the Tennessee Supreme Court, all Judges of the Tennessee Court of Appeals, Donald P. Harris, a senior judge, (the Governor and judges shall be referred to as "State Defendants"), the Democratic Party of Tennessee together with its chairman, and the Tennessee Republican Party together with its chairman (all defendants as a group shall be referred to as "Defendants").  Ms. Durham alleged that the Tennessee Plan, which is a shorthand reference for the statutory method for selection and retention of appellate judges, violates the Tennessee and United States Constitutions.

She also alleged that the statutes providing for the appointment of special judges and senior judges violate the Tennessee and United States Constitutions; challenged Executive Order 34, by which Governor Haslam created a Commission for Judicial Appointments to replace the former Judicial Nominating Commission; and complained that she was not provided a fair and impartial hearing in a separate employment termination case she filed in 2006 against the Tennessee Department of Labor and Workforce Development (the "2006 Lawsuit").  As relief, Ms. Durham seeks a declaratory judgment that the Tennessee Plan, the senior judge statutes, and special judge statutes are all unconstitutional; injunctive relief; damages in the amount of $1,000,000; and an award of her attorney's fees and costs.

The State Defendants, the Republican Party, and the Democratic Party each filed a motion to dismiss Ms. Durham's complaint pursuant to Tenn. R. Civ. P. 12.02 (1) and (6).  The trial court granted the motions and dismissed Ms. Durham's complaint on October 7, 2014.  To the extent Ms. Durham's complaint focuses on judicial decisions in the separate case in which she is a party, the trial court found "those issues need to be resolved in those cases and not in this case."  With regard to Ms. Durham's challenge of the Tennessee Plan and statutes providing for the appointment of senior and special judges, the trial court found Ms. Durham lacks standing as a voter and citizen to challenge the general laws relating to the selection of judges.  The trial court also found Executive Order 34 was properly promulgated.  Turning to the political parties, the trial court found (1) they are private parties that cannot be liable for any purported involvement with a legislative system of judicial selection; (2) they are not state actors and are, therefore, not subject to federal constitutional claims under 42 U.S.C. § 1983; and (3) they have no formal involvement in the process of nominating and appointing

2

judges.

Ms. Durham appeals the trial court's order.

## II.  STANDARD OF REVIEW

The Defendants based their motions to dismiss on Rules 12.02(1) and (6) of the Tennessee Rules of Civil Procedure.  They argued both that the trial court lacked subject matter jurisdiction because Ms. Durham lacked standing to pursue her claims and that Ms. Durham's complaint failed to state a claim for which relief could be granted.  A motion to dismiss for lack of subject matter jurisdiction "call[s] into question the court's 'lawful authority to adjudicate a controversy brought before it,' and, therefore, should be viewed as a threshold inquiry."  *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012) (quoting *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)).  When a court's subject matter jurisdiction is challenged, the plaintiff has the burden of establishing that the court has jurisdiction to adjudicate his or her claim. *Redwing*, 363 S.W.3d at 445.

A motion to dismiss based on Tennessee Rule of Civil Procedure 12.02(6) requires a court to determine if the pleadings set forth in the complaint state a claim for which relief can be granted.  TENN. R. CIV. P. 12.02(6).  A motion under Rule 12.02(6) alleges the complaint is legally insufficient; it does not challenge the strength of the plaintiff's evidence in support of the claim.  *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014).  The proponent of the motion "'admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"  *Id.* (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)).  In ruling on motions to dismiss for failure to state a claim, trial courts are directed to "'construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'"  *Id.* (quoting *Webb*, 346 S.W.3d at 426).

On appeal, the appellate court reviews the trial court's decision on a motion to dismiss de novo, affording it no presumption of correctness. *Id.*

## III.  SELECTION AND ELECTION OF APPELLATE JUDGES

Ms. Durham contends that the Tennessee Plan is unconstitutional under the Tennessee Constitution and also deprives her of rights protected by the United States Constitution.  The Tennessee Plan is codified at Tenn. Code Ann. §§ 17-4-101 *et seq.* Those statutes established the method for the selection and election of appellate court judges in Tennessee, as described in more detail in *Hooker v. Haslam*, 437 S.W.3d 409

(Tenn. 2014). Essentially, the Plan included a merit selection process and a merit retention process. The selection process included vetting by a state judicial nominating commission,[2] Tenn. Code Ann. § 17-4-102(a), and appointment by the Governor from candidates nominated by the commission to fill a vacancy occurring during the term of office of a judge of the Court of Appeals, Court of Criminal Appeals or Supreme Court. Tenn. Code Ann. § 17-4-109.

Additionally, under the Plan, any incumbent appellate judge who sought election to fill out a term or reelection for a full eight-year term could file a written declaration of candidacy. Tenn. Code Ann. § 17-4-115(a). Upon proper filing of a declaration of candidacy, the judge's performance was evaluated by the Judicial Performance Evaluation Commission. If recommended for retention by that Commission, the judge stood for election in a retention election, in which only the name of the judge, without party designation, was submitted to the statewide electorate who voted whether or not to retain that judge. Tenn. Code Ann. §§ 17-4-114 and -115. A judge was elected if a majority of the voters voted to retain him or her. Tenn. Code Ann. § 17-4-115(d)(1).

When the Tennessee Plan was enacted, and when Ms. Durham filed her complaint, the relevant provision of the Tennessee Constitution, Article VI, Section 3 provided in pertinent part:

> The Judges of the Supreme Court shall be elected by the qualified voters of the State. The Legislature shall have power to prescribe such rules as may be necessary to carry out the provisions of section two of this article.

Article VI, Section 4 made similar provision for intermediate appellate courts, stating that they and other inferior courts "shall be elected by the qualified voters." Article VI, Section 3 of the Tennessee Constitution was amended in November 2014, after Ms. Durham filed her complaint.[3] Following the November 2014 amendment,

---

[2] The judicial nominating commission was allowed to go out of existence, pursuant to Tennessee's "Sunset" law, Tenn. Code. Ann. § 4-29-233(a)(15), and after a year to wind up its business, ceased to exist as of July 1, 2013. In *Hooker v. Haslam*, the Special Supreme Court held that any challenges to the statutory nominating commission process had been rendered moot by the expiration of that commission. 437 S.W.3d at 417.

[3] Ms. Durham attempted to amend her complaint to add a challenge to the procedure by which the proposed amendment of Article VI, Section 3 was included on the ballot in November 2014. However, the trial court denied Ms. Durham's motion to amend her complaint based on her failure to state in her motion how she proposed to amend her complaint. The trial court specified that Ms. Durham could file another motion to amend if it was properly supported, but Ms. Durham failed to do this. Instead, she chose to simply file an amended complaint, with no motion attached. Ms. Durham is not permitted to amend her complaint without permission from the court. TENN. R. CIV. P. 15.01.

Article VI, Section 3 now provides in relevant part:

> Judges of the Supreme Court or any intermediate appellate court shall be appointed for a full term or to fill a vacancy by and at the discretion of the governor; shall be confirmed by the Legislature; and thereafter, shall be elected in a retention election by the qualified voters of the state. Confirmation by default occurs if the Legislature fails to reject an appointee within sixty calendar days of either the date of appointment, if made during the annual legislative session, or the convening date of the next annual legislative session, if made out of session. The Legislature is authorized to prescribe such provisions as may be necessary to carry out Sections two and three of this article

Thus, Article VI, Section 3 has been amended to incorporate the basic components of the Tennessee Plan: (1) appointment by the Governor to fill a vacancy, adding legislative confirmation, and (2) retention elections.

In a large part of her argument, Ms. Durham relies on language from the earlier version of Article VI, Section 3 that "[t]he Judges of the Supreme Court shall be elected by the qualified voters of the State." She contends the Tennessee Plan[4] violates this constitutional provision because that statutory method allegedly deprives her and other Tennessee citizens of the opportunity guaranteed by the Tennessee Constitution to elect appellate court judges.

The Tennessee Plan, or some variant thereof, has been challenged on numerous occasions, and each time the courts have determined it is constitutional. The Tennessee Supreme Court first addressed it in *State by Shriver ex rel. Higgins v. Dunn*, 496 S.W.2d 480 (Tenn. 1973). In that case, the Court considered whether a retention election involving only a yes/no vote was the type of election contemplated in Article VI, Section 3 of the Tennessee Constitution. *Dunn*, 496 S.W.2d at 488. Answering in the affirmative, the *Dunn* Court wrote:

> The Constitution of Tennessee does not define the words, "elect", "election", or "elected" and we have not found nor have we been referred to any provision of the Constitution or of a statute or to any decision of one or our appellate courts defining these words.

---

[4] She makes similar challenges to the statutes providing for appointment of senior judges and special judges, which will be discussed later in this opinion.

*Id.* at 489. Noting that the Tennessee Constitution refers to referenda, which are limited to an approval or disapproval, as "elections," the Court reasoned that a yes/no vote to retain an appellate judge also qualifies as an election. *Id.* at 489. The *Dunn* Court continued, "This is particularly the case, since Article 7, Section 4 reposes wide discretion in the Legislature with respect to elections and the filling of vacancies." *Id. See also State ex rel. Hooker v. Thompson*, 249 S.W.3d 331, 338 (Tenn. 1996).

The most recent case to consider the Tennessee Plan is *Hooker v. Haslam*, 437 S.W.3d 409 (Tenn. 2014). In that case, as here, the plaintiff argued that the Tennessee Plan was unconstitutional because the retention election process was inconsistent with the Constitution's requirement that appellate judges be elected by qualified voters despite the fact that two prior holdings of the Tennessee Supreme Court had established otherwise. *Id.* at 414-16. In a thorough opinion, the *Hooker v. Haslam* Court, composed of Special Justices, reviewed the earlier holdings that the retention election portion of the Tennessee Plan is constitutional. *Id.* at 426.

The *Hooker v. Haslam* Court noted that the Court deciding *Thompson* had not simply applied *stare decisis*, but, instead, had "itself considered and analyzed the question*." Id.* The *Hooker v. Haslam* Court also determined that, although it could dispose of the case on the basis of *stare decisis*, it would conduct its own independent review "in order to obviate any further attempts to bring taint and invalidity challenges to existing precedent." *Id.*

The Court defined the question as whether the phrase "shall be elected by the qualified voters" referred only to a contested popular election "or whether it included other kinds of elections in which the members of the public vote, such as a referendum or a retention election." *Id.* at 426-27. It is not necessary to recount the entirety of the Court's reasoning, but only to recognize that the Court held that a retention election offers voters an opportunity to choose or elect between two alternatives and, consequently, was consistent with the Tennessee Constitution. *Id.* at 428-29. The opinion in *Hooker v. Haslam* was delivered on March 17, 2014. Ms. Durham filed her complaint in this case on June 25, 2014.

The issue raised herein by Ms. Durham as to the constitutionality of the Tennessee Plan has been decided contrary to her position. This Court, of course, is bound by decisions of the Tennessee Supreme Court. In any event, the constitutional language Ms. Durham relies upon no longer appears in the Tennessee Constitution, and the statutory basis for the retention election of appellate judges has been replaced by the November 2014 amendment to that Constitution. Consequently, her arguments that the challenged statutes violate the Tennessee Constitution should be considered moot. Nonetheless, we

6

now turn to the trial court's bases for dismissing the complaint herein.

## IV. STANDING

The trial court granted Defendants' motions to dismiss Ms. Durham's complaint, in part, on the basis that Ms. Durham lacks standing to challenge the statutes regarding selection and retention of appellate court judges. In her complaint, Ms. Durham described herself as "a voter, citizen and resident of Wilson County" and as "a party to an appeal currently pending before the Tennessee Court of Appeals." Holding that Ms. Durham lacked standing, the trial court wrote:

> As a voter and citizen, she has no standing to challenge the general laws relating to the selection of the judges. As a voter and citizen, Plaintiff asserts an interest applicable to all citizens. As such, she has no standing to bring this suit. . . . [T]he same holds true for the Plaintiff as someone with litigation pending in court. Here she speculates that somehow she will be negatively impacted by a system peopled by "team players" selected as judges by the overtly partisan system she challenges. While her status as a person who has a case pending may be more narrow than that of a voter, it still only places her among the scores of thousands of persons who have cases pending in Tennessee State Courts.

The doctrine of "standing" considers whether a particular litigant is properly situated to have a court decide issues the litigant raises in a particular action. *Am. Civil Liberties Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Our Supreme Court has opined that a plaintiff must show three indispensable elements to establish standing: (1) a distinct and palpable injury; (2) a causal connection between the claimed injury and challenged conduct; and (3) a showing that the alleged injury can be redressed by a favorable judicial decision. *Darnell*, 195 S.W.3d at 620. The *Darnell* Court explained that "[s]tanding . . . may not be predicated upon an injury to an interest that the plaintiff shares in common with all other citizens." *Id.* (citing *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001)).

Ms. Durham has failed to allege any injury that is distinguishable from other voters, citizens, or litigants. Instead, Ms. Durham complains that she, along with the other citizens and voters of Tennessee, is denied the opportunity to select appellate court judges, senior judges, and special judges, by popular contested elections. This alleged injury is shared by all voters and citizens of Tennessee. As stated earlier, standing cannot be based on an alleged injury that a plaintiff has in common with all other citizens. *Darnell*, 195 S.W.3d at 620. In *Mayhew v. Wilder*, 46 S.W.3d 760 (Tenn. Ct. App.

7

2001), the Court of Appeals quoted with approval the following language from American Jurisprudence 2d when addressing the issue of standing:

> In determining whether the plaintiff has a personal stake sufficient to confer standing, the focus should be on whether the complaining party has alleged an injury in fact, economic or otherwise, which distinguishes that party, in relation to the alleged violations, from the undifferentiated mass of the public.

*Mayhew*, 46 S.W.3d at 767 (quoting 32 AM. JUR. 2D *Federal Courts* § 676 (1995)). The *Mayhew* court continued that a plaintiff challenging the constitutionality of a statute is required to show that he or she "'personally has sustained or is in immediate danger of sustaining, some direct injury . . . and not merely that he [or she] suffers in some indefinite way in common with people generally.'" *Id.* (quoting *Parks v. Alexander*, 608 S.W.2d 881, 885 (Tenn. Ct. App. 1980)).[5]

In *Moncier v. Haslam*, 1 F. Supp. 3d 854 (E.D. Tenn. 2014), the federal district court for the Eastern District of Tennessee did not consider the merits of a challenge to the Tennessee Plan because the court found the plaintiff lacked standing. *Moncier*, 1 F. Supp. 3d at 861. The plaintiff wanted to appear on the August 2014 ballot as a candidate for a position on the Tennessee Court of Criminal Appeals, even though he had not applied to the Judicial Nominating Commission, as required by the Tennessee Plan. *Id.* at 856-57. The plaintiff filed suit alleging that the Tennessee Plan violated his rights under the First and Fourteenth Amendments to the United States Constitution because he was denied access to the August 2014 ballot and the right to political association. *Id.* at 857. The district court determined that the plaintiff lacked standing, writing:

> While the Court recognizes plaintiff's injury in that he was denied the opportunity to be placed on the August 2014 ballot, it is difficult to find, on the basis of his allegations and arguments, that his claim is not a generalized grievance shared by a large class of citizens, all of whom are denied the opportunity to be placed on the August 2014 ballot. Undoubtedly, any Tennessean who desires to run for the office of an appellate judge would encounter the exact same obstacles that plaintiff has asserted here. The Court thus finds that plaintiff has failed to demonstrate standing.

---

[5]Ms. Durham argues she has suffered a direct injury as a result of her negative experiences litigating her employment termination claim. However, any complaint Ms. Durham has regarding her employment termination lawsuit, whether due to a particular judge or otherwise, should be raised in that lawsuit, not here or in a separate action.

*Id.* at 861. The *Moncier* court explained that "when a plaintiff asserts that the law has not been followed, the plaintiff's 'injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court] ha[s] refused to countenance in the past.'" *Id.* at 859 (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007)).

The *Moncier* court held that any person seeking to apply for an appellate court position would suffer the same alleged injury as the plaintiff, affirming that a plaintiff's interest must be different from not only the general public, but also from any large class of citizens. We conclude that litigants in Tennessee courts are such a large class, in response to Ms. Durham's allegation that she has standing because she is a litigant in the 2006 Lawsuit.

Accordingly, we hold that Ms. Durham has failed to allege an injury that is not distinct from that suffered in general by other citizens subject to the same law. *See Darnell*, 195 S.W.3d at 620; *Thomas v. Shelby Cnty.*, 416 S.W.3d 389, 393 (Tenn. Ct. App. 2011).

Finally, as stated earlier, to establish standing, a plaintiff must show a distinct and palpable injury and a causal connection between the claimed injury and challenged conduct. Ms. Durham has failed to allege any palpable injury. She has been unable to point out any injury to her resulting from the method for selecting appellate judges. Her primary complaint is a deprivation of her alleged right to vote directly in a contested election for appellate judges. However, no such right exists. As settled by Tennessee Supreme Court decisions construing the Tennessee Constitution, and then by amendment of that Constitution, it is clear that no such right can be found in the Tennessee Constitution. Any argument that such a right can be found in the United States Constitution is baseless because, under that Constitution, federal judges are appointed for lifetime terms and never stand for any type of election. Additionally, Ms. Durham has had, and still has, the right to vote for or elect appellate judges in a retention election.

Ms. Durham has also argued that, somehow, the method of selecting and electing state appellate judges has disadvantaged her in her 2006 Lawsuit. She has failed to allege any specific injury to her resulting from that method. Since her only appearance in an appellate court in that earlier litigation, any alleged harm would have occurred in the Court of Appeals decision affirming Judge Harris's denial of her recusal motion, as discussed below. There is a procedure for challenging that decision, and that procedure does not include this type of collateral attack. Also, she has not and cannot allege any specific connection between the Tennessee Plan method selection of judges and the opinion by the panel of judges deciding her appeal.

9

The trial court's dismissal of Ms. Durham's complaint for lack of standing is affirmed.

## V. TRIAL COURT, SPECIAL, AND SENIOR JUDGES

### A. Trial Court Judges Herein

Ms. Durham appears to raise an issue specifically related to both the trial judge who granted Defendants' motions to dismiss in this case as well as the trial judge who ultimately ruled on a motion to dismiss and a motion to recuse in the 2006 Lawsuit. The 2006 Lawsuit involved a challenge by Ms. Durham to the termination of her employment with the State of Tennessee. *See Durham v. Tenn. Dep't of Labor and Workforce Dev.*, M2014-00428-COA-R3-CV, 2015 WL 899024 (Tenn. Ct. App. Feb. 27, 2015). In that case, Ms. Durham filed a motion to recuse Senior Judge Donald P. Harris, a defendant in this case, who was sitting as a special judge after Judge Barbara Haynes recused herself upon Ms. Durham's motion seeking the same. *Id*. at *3. Judge Harris denied Ms. Durham's motion requesting his recusal, and Ms. Durham appealed that decision. *Id.* at *9-10. The Court of Appeals in the 2006 Lawsuit described Ms. Durham's argument in support of her motion to recuse Judge Harris as follows:

> In her January 2014 motion, Ms. Durham contended that the "strong" appearance of bias on the part Judge Harris, coupled with his "unlawful appointment," required Judge Harris to recuse himself from the matter. Ms. Durham alleged that Judge Harris "was hand picked by the defendants" and was neither elected nor "randomly assigned to the case." She asserted that Judge Harris's "conduct in the case" was "so far beyond the pale of normalcy" that it could only be attributed to bias and a conspiracy between the judge and Defendants. Ms. Durham further asserted that Judge Harris's "entire employment depends upon the defendants who without oversight or recourse can hire or fire him as they see fit." Her argument, as we perceive it, is that not only are the statutes governing the appointment and assignment of special judges unconstitutional, but that any special judge would be biased against her because the judge's "employment" depends upon the State.

*Id*. at *10.

The Court of Appeals then rejected Ms. Durham's argument in support of her motion to recuse:

> Ms. Durham's motion to recuse contained nothing to support her

10

allegations that Defendants "hand picked" Judge Harris. There is nothing in the record to support Ms. Durham's allegations of conspiracy. On the contrary, the record reflects that the trial court went to great lengths to accommodate all of the parties in this matter and to move the action to trial. To the extent that Ms. Durham relies on Judge Harris's position as an employee of the State for the proposition that he has a financial interest in the matter because he is financially compensated by the State, we note that all of the State's judges are State employees. *Gay v. City of Somerville*, 878 S.W.2d 124, 128 (Tenn. Ct. App. 1994). . . . Finding no evidence of particularized bias or prejudice on the part of Judge Harris, we affirm the trial court's denial of Ms. Durham's motion to recuse.

*Id.* at *11 (footnote omitted).

As the trial court herein noted, Ms. Durham is attempting, in this case, to collaterally attack the Court of Appeals' decision from the 2006 Lawsuit affirming that trial court's judgment denying Ms. Durham's motion to recuse Judge Harris. As the trial court found, this is "clearly impermissible." The appropriate way to appeal a decision by the Court of Appeals is to file a petition for permission to appeal with the Supreme Court, *see* TENN. R. APP. P. 11, not attack the decision in a separate action. *See Hood v. Jenkins*, 432 S.W.3d 814, 825 (Tenn. 2013) (precluding party from making collateral attack on prior judgment); *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (holding litigant cannot collaterally attack decisions from earlier case when party could have filed timely appeal).

Judge Walter C. Kurtz was the special trial court judge in this case. The record does not reflect, and Ms. Durham does not contend, that she filed a motion at the trial level asking Judge Kurtz to recuse himself. Thus, we hold that she has waived the right on appeal to complain about the appointment of Judge Kurtz to adjudicate her case at trial. *See Alexander v. Armentrout*, 24 S.W.3d 267, 272 (Tenn. 2000) (holding argument not raised at trial may not be raised for the first time on appeal); *Watson v. Watson*, 309 S.W.3d 483, 497 (Tenn. Ct. App. 2009) (noting appellate court may treat issue not raised at trial as waived).

B.  Senior and Special Judges Generally

Ms. Durham challenges the statutes governing the appointment of special judges and senior judges, alleging they are unconstitutional because they do not provide for the election of such judges by the "qualified voters." However, the Tennessee Constitution specifically addresses special judges in the context of disqualification of a judge for interest. Article VI, Section 11 provides that the legislature may make provision for the

appointment of special judges to hear any cause in which a judge may be disqualified. Accordingly, the General Assembly has enacted Tenn. Code. Ann. §§ 17-2-101 *et seq.* and §§ 17-2-301 *et seq.*, which provide for the appointment of special judges and senior judges.

The specific claim raised by Ms. Durham was decided contrary to her position in *State ex rel. Witcher v. Bilbrey*, 878 S.W.2d 567 (Tenn. Ct. App. 1994), in which the court determined that Art. VI, Sec. 11, establishing the authority of the legislature to provide for special judges, was not undermined by the general language of Art. VI, Sec. 4. *Id.* at 575.

Ms. Durham also argues that any special judge or senior judge would be inclined to decide against her because such judge was appointed by state officials. She filed motions asking the judges on this panel to recuse ourselves based, in part, on the same reasoning. Those motions were denied. Ms. Durham was unable to make any allegations that would require disqualification under the Tennessee Constitution, Art. VI, Sec. 11; Tenn. Code Ann. § 17-2-101; or Tenn. R. Sup. Ct. Rule 10, RJC 2.11. A party challenging the impartiality of a judge '"must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned."' *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012) (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). Ms. Durham has made no specific allegation that would raise any question of the impartiality of special judges or senior judges as a group.

It is worth noting that Ms. Durham has pursued a course of seeking recusal of sitting judges, seeking to create a conflict by suing those judges. The procedure for using special and senior judges exists in part for the situation where a judge recuses himself or herself. As this court stated in *Durham v. Tenn. Dep't of Labor and Workforce Dev.*, 2015 WL 899024, at *11:

> Assuming, for the sake of argument, that all State judges have some sort of personal interest in the outcome of this lawsuit because they are State employees, the "Rule of Necessity" would apply to Ms. Durham's motion to recuse, absent evidence of a particularized and distinct bias, prejudice, or appearance of impropriety. *See Hooker v. Haslam*, 393 S.W.3d 156, 167 n.8 (Tenn. 2012).

Finally, based upon the same reasoning we used to conclude that Ms. Durham lacks standing to challenge the Tennessee Plan, we also hold Ms. Durham lacks standing to challenge the statutes regarding the appointment of special judges, Tenn. Code Ann. §§ 17-2-101 *et seq.*, and/or the statutes regarding the appointment of senior judges, Tenn.

Code Ann. §§ 17-2-301 *et seq.* We affirm the trial court's decision to dismiss these claims.

VI. OTHER CHALLENGES

A. Executive Order 34

On October 16, 2013, Governor Haslam issued Executive Order 34, which established the Governor's Commission for Judicial Appointments for Purposes of Filling Vacancies in the Trial and Appellate Courts in Tennessee (the "Commission"). The Commission was created to replace the former Judicial Nominating Commission, which "sunsetted" and wound up its affairs on June 30, 2013. Ms. Durham alleges in her complaint that Executive Order 34 is invalid because it was not promulgated pursuant to the provisions of the Uniform Administrative Procedures Act ("UAPA"), codified at Tenn. Code Ann. §§ 4-5-101–4-5-325. Ms. Durham further alleges that the Commission violates the Open Meetings Act by meeting in secret.

The trial court properly concluded that the Governor is exempt from the requirements of the UAPA and that the Commission created in Executive Order 34 is not subject to the Open Meetings Act. Tennessee Code Annotated section 4-5-106(a) specifically states that "This chapter shall not apply to . . . the governor . . . ."

The Open Meetings Act (the "Act"), codified at Tenn. Code Ann. §§ 8-44-101 *et seq.*, provides that "[a]ll meetings of any governing body are declared to be public meetings open to the public at all times . . . ." Tenn. Code Ann. § 8-44-102(a). "Governing body" is defined, in pertinent part, as "[t]he members of any public body which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public body on policy or administration . . . ." Tenn. Code Ann. § 8-44-102(b)(1)(A). Our Supreme Court has explained:

> [F]or the purpose of this Act, the Legislature intended to include any board, commission, committee, agency, authority or any other body, by whatever name, whose origin and authority may be traced to State, City or County legislative action and whose members have authority to make decisions or recommendations on policy or administration affecting the conduct of the business of the people in the governmental sector.

*Dorrier v. Dark*, 537 S.W.2d 888, 892 (Tenn. 1976).

As the State Defendants point out, the Governor cannot be a "governing body," as defined, because he is not made up of two or more members. The Commission that the

13

Governor established pursuant to Executive Order 34 is not a "governing body" either because it does not meet the first prong of the definition of "public body" set out in *Dorrier v. Dark*. The Commission does not derive its origin or authority from any state, city, or county legislative action. The Commission was created by the Governor to advise him on judicial appointments. Executive Order 34 makes clear that the Commission is only authorized to make recommendations to the Governor on potential candidates to be appointed to fill judicial vacancies. Its members are not authorized to make decisions or recommendations on policy, and any recommendations on candidates it may make are to the Governor, who is not a "public body."

Thus, the trial court was correct in concluding that the Governor did not violate the UAPA in promulgating Executive Order 34 and that the Commission does not operate in violation of the Open Meetings Act because the Act does not apply to the Commission's activities.

### B. Conspiracy Claims

The elements of a cause of action alleging conspiracy include "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001)). Allegations of conspiracy must be asserted with specificity; conclusory allegations that are not supported by material facts are not sufficient to state a conspiracy claim. *Id.*

Ms. Durham's complaint refers to conspiracy in only two paragraphs:

¶73. The actions of the defendants in creating and implementing the Tennessee Plan, Senior and Special Judge statutes, and conspiring with one another to maintain their own individual property right interest in their appointments deprives plaintiff of her constitutional rights under the color of state law in violation of 42 U.S.C. § 1983.

¶89. For all of the above stated reasons, the Tennessee Plan is patently unconstitutional and the defendants, Democratic and Republican parties are aware of the same. These defendants for the purpose of commercial gain actively conspire with the remaining defendants to violate Ms. Durham's constitutional rights under color of law. The defendants make false statements to the public concerning the true nature of retention elections; they conceal information that is necessary for a fair assessment of the judicial candidates and the election process; they are in a fiduciary position

14

in relation to voters; voters rely upon their fraudulent statements to their detriment. The defendants have a duty to deal honestly with Ms. Durham, a voter.

The trial court found these allegations "conclusory and factless." The court wrote:

> Plaintiff contends that the parties "conspire" with the other Defendants to maintain a system of judge selection and "the Defendants' actions further their own individual interest and not the interests of Ms. Durham." This allegation does not meet specificity requirements. Conspiracy claims must be pled with specificity, conclusory allegations are not sufficient.

As the trial court pointed out, the political parties are barred from any formal involvement in the judicial selection process. Executive Order Number 34 specifically excludes anyone from serving on the Commission who holds an office in any political party or political organization.[6] When the Judicial Nominating Commission was still in force, members of political parties were barred from participating in that commission as well. *See* Tenn. Code Ann. § 17-4-104(a) (Supp. 2015) ("[n]o member of the judicial nominating commission shall be a salaried office holder of this state or the United States, nor shall any member of the commission hold any office in any political party or political organization"); Tenn. Code Ann. § 17-4-104(b) (Supp. 2015) ("[a]ny member of the judicial nominating commission who becomes a salaried office holder of this state or the United States or who accepts any office in any political party or political organization ipso facto vacates the member's office as a member of the commission"). Moreover, the political parties are private organizations, not state actors, and, therefore, are not subject to federal constitutional claims based on 42 U.S.C. § 1983. *See Federspiel v. Ohio Republican Party State Cent. Comm.*, 85 F.3d 628, 628 (6th Cir. 1996) (affirming trial court's dismissal of § 1983 case because Republican party is not state actor); *Schneller v. Philadelphia Newspapers, Inc.*, 577 Fed. Appx. 139, 143 (3rd Cir. 2014) (holding that Republican party is not state actor subject to liability pursuant to 42 U.S.C. § 1983).

Moreover, the Tennessee Democratic Party and the Tennessee Republican Party

---

[6]Executive Order No. 34 states at section 2(l) that:

Any member of the Commission who becomes a salaried office holder of this State or the United States, or who accepts any office in any political party or political organization, vacates the member's office as a member of the Commission.

15

are barred from any formal involvement in the judicial selection process, which is the basis of Ms. Durham's complaint. Ms. Durham fails to specify in her complaint particular acts by particular individuals that were unlawful and that caused her to suffer harm. Accordingly, the trial court correctly dismissed the claims against the political parties.

Absent the necessary specificity of particular acts by individuals who shared a common design to accomplish an unlawful purpose through concerted action, or a lawful purpose through unlawful means, resulting in injury to Ms. Durham, her conspiracy claims against State Defendants must also fail. None of the acts she alleged occurred are unlawful in purpose or means. Additionally, she lacks standing to bring these claims.

We conclude the trial court acted properly in dismissing Ms. Durham's conspiracy claims.

C. Amendment 2

The final issue Ms. Durham raises on appeal concerns the amendment of Article VI, Section 3 of the Tennessee Constitution that occurred as a result of the November 2014 general election. Ms. Durham argues in her brief that this amendment is void. The only reference Ms. Durham makes in her complaint to what she refers to as "Amendment 2" is the following:

> ¶91. In yet another attempt to deceive Tennessee voters, the defendants caused to be placed upon the November 2014 ballot a constitutional amendment referendum that if passed seeks to take away Ms. Durham's right to elect appellate judges. Instead of focusing their efforts on government business, the defendants use taxpayer resources to campaign for the passage of the amendment because the amendment is in their personal best interest. For all of the above stated reasons, the amendment if passed will also be unconstitutional.

As discussed above, prior to the amendment of Article VI, Section 3, Ms. Durham did not have the right to vote in a contested, popular election for appellate judges. The allegations in her complaint are not based on any factual allegations and are opinion and conclusion only. In any event, the amendment was adopted by the voters.

In her complaint, Ms. Durham fails to set forth any claim for which relief can be granted with respect to the amendment of Article VI, Section 3. Accordingly, we reject Ms. Durham's allegation that the amendment and the resulting election is void.

16

## VII. CONCLUSION

For the reasons set forth above, we affirm the trial court's judgment in all respects. Costs of this appeal shall be taxed to the appellant, Sherrie L. Durham, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, S. JUDGE